No. 1,445.

## Jennings *v.* Bond.

LANDLORD AND TENANT.—*Action in Ejectment by Landlord.—Summons.—Tenant Yielding Possession.*—A tenant, upon whom a summons in ejectment is served by his landlord, has a right to yield the possession, and no acts of the latter, without such tenant's consent, can thereafter restore the relation of landlord and tenant between them.

SAME.—*Tenant Wrongfully Evicted.—Measure of Damages.*—A tenant wrongfully evicted is not confined to the difference between the contract rent and the actual value of the use of the premises, but may recover expenses for removing his furniture to other premises with, perhaps, the value of the time actually lost.

SAME.—*Lease.—Condition Of.—Care of Premises.—Wear and Tear Incident to Use.*—The provision in a lease that the lessee shall turn over the premises at the end of the term in as good condition as when leased, is limited by the duty of the landlord to permit such wear and tear of the premises as is incident to the use to which they are put.

PLEADING.—*Counterclaim.— Damages.—Landlord and Tenant.*—A counterclaim in an action for rent for the destruction of defendant's business by the landlord's repeatedly and insolently demanding possession, ordering the defendant to vacate, threatening suit and commencing an ejectment suit against him, sufficiently avers that the possession of the lessee was interfered with, and that he was ejected, where it further states that by reason thereof he was unable to conduct the school for which he had leased the room, and he was compelled to cease to carry it on and his business was thereby destroyed.

SAME.—*Answer.—Action for Rent.—Constructive Eviction.—Landlord and Tenant.—Ejectment.*—An answer in an action for rent, averring a constructive eviction by showing that the lessor brought an action to oust the lessee, and that thereupon both the latter and his subtenant removed from the premises and turned the keys over to the lessor, is sufficient, although the complaint alleges that he has used and is still using and occupying the premises.

SAME.—*Answer.—Landlord and Tenant.—Action for Damages to Premises.—Subletting.*— An answer in an action by a landlord against a tenant for injury to the building by subletting contrary to the terms of the lease, that the plaintiff consented and suffered

Jennings *v.* Bond.

the sublessee to p it an engine in the building to propel his machinery, and that no greater injury was done than was incident to the conduct of the business so carried on with the consent of the landlord, if argumentative is not demurrable.

SAME.—*Counterclaim.—Damages.—Averment of Due and Unpaid not Necessary.—Landlord and Tenant.*—A counterclaim in an action for rent averring the destruction of defendant's business by the interference of the landlord with his possession, need not aver that the damages are due and unpaid.

From the Henry Circuit Court.

*W. O. Barnard, M. E. Forkner* and *W. E. Jeffry,* for appellant.

*D. W. Chambers, J. Brown, W. A. Brown* and *J. M. Morris,* for appellee.

REINHARD, J.—Appellant sued the appellee in the court below, and recovered of him a judgment for $75. With this he is not satisfied, for the reason that it is too low, as he contends.

The complaint is in three paragraphs. The first paragraph alleges in substance that the plaintiff, on the 14th day of April, 1888, leased to the defendant certain property by a written lease, a copy of which is filed with the complaint, for the term of five years; that the defendant took possession of the same under the lease, and has ever since used and occupied it; that there is due and unpaid rent amounting to the sum of $300, for which he demands judgment.

The second paragraph avers the leasing, and that the defendant, contrary to the terms of the lease, and without the consent of the plaintiff, sublet a portion of the premises, and that said premises were, by such sub-tenant, greatly damaged by having the walls discolored and the floors and walls bespattered with dirt and grease, and part of the building broken; and by running an engine therein, contrary to the terms of the

lease, whereby the walls of the building were much shaken and cracked and greatly damaged, all to the injury of the plaintiff in the sum of $200, for which he demands judgment.

The third paragraph is a common count for the rent, use and occupation of the premises therein described, a bill of particulars of which is filed with the complaint. The contract of leasing and the bill of particulars are set forth in the record.

The contract provides that the premises are to be used and occupied by Jesse Bond for an office and for school purposes, and for no other purpose, and that they are not to be subleased and occupied by other parties, or the lease assigned by said Bond without the consent of the said Jennings; and that no nails are to be driven in the walls, and no waste committed or damage done to the premises. The following addendum was made to the contract and agreed to between the parties: "January 27th, 1890. It is hereby agreed by the parties herein that said Jesse Bond have the right to sublease to the New Castle Democrat, by payment of $10 per year additional; and said Jesse Bond hereby agrees and binds himself to return and leave said rooms at the expiration of his said lease in as good condition as when leased; also it is agreed that said New Castle Democrat shall not put into said rooms any steam boiler or engine of any description. Witness our hands."

The answer is in four paragraphs, the first of which is the general denial. The second paragraph answers so much of the first and third paragraphs of the complaint as seeks to recover for rent for said real estate from and after May 1, 1892, and says: "That on the 13th day of April, 1892, the said Levi A. Jennings filed his complaint in the Henry Circuit Court, against this defendant and one Peter M. Gillies, in two paragraphs,

and on the same day caused to be issued a summons thereon, which was on said day served on this defendant and the said Peter M. Gillies, in the first paragraph of which the plaintiff alleged that the said Jesse Bond and Peter M. Gillies were holding possession of the real estate described in the plaintiff's complaint in this cause unlawfully and without right, and they had been doing so for more than one year last past, and that he, the said Levi A. Jennings, was entitled to the immediate possession thereof, and he therein demanded judgment for the possession of said real estate; that in pursuance of said demand and suit, the defendant immediately thereafter commenced to vacate said premises himself, and had wholly vacated the front room occupied by him prior to the 26th day of April, 1892, and whilst said paragraph of said complaint was on file in said court, and in no way amended; and that on said 13th day of April, 1892, immediately after receiving notice of the filing of said complaint by said Levi A. Jennings, said defendant notified his sub-tenant, Peter M. Gillies, to vacate the part of said premises sublet and occupied by him, and the said Peter M. Gillies, in pursuance of said notice, immediately proceeded to procure other premises for his printing and newspaper offices, and on the 23d day of April, 1892, entered into a lease for other premises for said printing and newspaper offices for a period of three years, and at once proceeded to remove his entire plant from the said premises of the said Jennings, and on the —— day of April, 1892, the entire premises leased from the plaintiff in this cause by the defendant were vacated, and the full possession surrendered to the said Levi A. Jennings, and the keys thereof turned over to him."

To this paragraph of the answer a demurrer was overruled, and appellant insists that such ruling was error.

It is contended by the appellant's counsel that, inasmuch as the first paragraph of the complaint alleges that appellee has used and is still using and occupying the premises, the complaint cannot be fully answered without meeting such averment, and that the same has not been met by any allegations of the answer set out. It is true under our statute, as well as under the rules of good pleading, that every material allegation of the complaint which is not controverted by the answer must be taken as true for the purpose of the action. R. S. 1894, section 386. Hence, if the pleading is open to the objection mentioned, the demurrer should have been sustained. The answer set out relies upon a constructive eviction as a defense to the action for rent. That such an eviction, on the part of the landlord, affords a good defense to the action for rent seems to be settled law. "If the tenant be at any time deprived of the premises, in whole or in part, by the landlord's agency, the obligation to pay rent ceases, because his obligation has force only from the consideration, which is the quiet enjoyment of the premises." Taylor L. and T., section 377; *Miller* v. *Michel*, 13 Ind. App. 190.

The term eviction is applied to every class of expulsion which is not a mere trespass by the landlord, but something of a grave and permanent character, done by him with the intention of depriving the tenant of the enjoyment of the leased premises. 12 Am. and Eng. Ency. L. 758 b. "To constitute an eviction the lessee must establish that the lessor, without his consent and against his will, wrongfully entered upon the demised premises and evicted him and kept him so evicted, and if the lessee has sublet, eviction of his under-tenant will, for this purpose, be an eviction of himself. But actual physical expulsion is not necessary. Any act of a permanent character done by the landlord, or by his procurement,

with the intention of depriving the tenant of the enjoyment of the premises demised, or any part of them, will be sufficient." Foa L. and T., p. 134.   A lessor cannot maintain an action for rent accruing subsequently to the bringing of an action of ejectment by him, if the lessor yielded possession in obedience to such action. Foa L. and T., pp. 135, 307; Woodfall L. and T. 410.

In such case, the bringing of the action for possession of the demised premises operates as an entry, and a final election by the lessor to terminate the tenancy, and although there has been no judgment in the ejectment suit, the lessor cannot afterwards maintain an action for rent due or covenants broken subsequently to the commencement of the action for possession.   *Jones v. Carter*, 15 M. and W. 718; Woods L. and T., 2 ed., p. 455.

We are of opinion that the second paragraph of the answer was sufficient to withstand the demurrer.   It substantially avers a constructive eviction by showing that the lessor brought an action to oust the appellee, and that thereupon both the appellee and his sub-tenant removed from the premises, and turned the keys thereof over to appellant.   It was not necessary to allege further that appellee has not had possession of the premises since then.   When a surrender is once pleaded, the presumption is that the status thus established continued until the contrary is made to appear, and it will not be necessary to aver that the tenant remained out of possession afterward.

The third paragraph of the answer was addressed to the second paragraph of the complaint, and in it the appellee averred that on the first day of February, 1890, plaintiff and defendant entered into an agreement whereby the plaintiff agreed that the defendant might sublease the rear room of the leased premises for the

purpose of, and to be used as, a printing office, and in consideration thereof the defendant agreed to pay the plaintiff $10 per year in addition to the amount stipulated in the lease and contract filed with the plaintiff's complaint for the said leased premises, and that on the —— day of ——, 1890, the plaintiff consented, and suffered the occupant of said rear room to put into said subleased room and operate therein a gas engine to propel his machinery; that said printing business was conducted in such a manner as to do no greater injury than is incident to the conduct of that business.

In the second paragraph of the complaint to which this answer is addressed, it is averred that the building was damaged by reason of the running of the engine, in that the walls were shaken and cracked, and it is insisted by appellant's counsel that this answer does not meet said averments in the second paragraph of the complaint. We think, however, the answer is as broad as the complaint, for it expressly alleges that no greater injury was done to said building than was incident to the conduct of the business carried on with the consent of the landlord. It may be that this answer is but an argumentative denial, but as argumentativeness is no ground for demurrer, there is no available error in the ruling complained of. Doubtless the facts pleaded in this paragraph of answer could have been proved under the general denial. In any event the appellant was not harmed by the overruling of the demurrer. Nor do we think that the provision in the contract that the lessee was to turn over the premises at the end of his term in as good condition as they were then in, will benefit the appellant, but must be taken with the limitation that the landlord will permit such wear and tear of the premises as is incident to the use to which it was put.

There was no error in the overruling of the demurrer to this paragraph.

What is denominated as the fourth paragraph of the answer is really a counterclaim, and in substance as follows: That after the execution of the lease and entering into the possession of the premises by the defendant Jesse Bond, and after subletting of the rear room of the said premises for a printing office by and with the consent of the plaintiff, and in consideration of an increased rental therefor, the plaintiff without right disturbed defendant's possession of said premises by repeatedly and in an insolent manner demanding the possession of said premises, and ordering defendant to vacate the same, and by threatening to bring suit in ejectment against him; and that on the 13th day of April, 1892, the plaintiff did commence in the circuit court of Henry county, Indiana, an ejectment suit against the defendant, and caused summons to be issued and served upon him; that because of said repeated demands for possession of said premises by plaintiff, and the repeated threats to bring suit against the defendant for possession and by reason of the suit aforesaid, defendant was unable to conduct the school in said room for which purpose he had leased the same, and was compelled to cease to conduct his said school, and his said business was destroyed, all to his damages in the sum of $1,000, which amount he offers to recoup, and he demands judgment for the residue.

To this pleading a demurrer was overruled, and it is insisted that this was error. One of the defects urged against it is that it does not aver that the damages are due and unpaid. This was not necessary. The rule that applies to a complaint on a debt is not applicable to a pleading which counts on a tort or even in damages

for a breach of contract. It cannot be assumed that a credit was given for the payment of the damages alleged, and if they have accrued to the appellee at all they must be due. Another objection urged is that the pleading does not aver that appellee was in fact interfered with in the possession of the premises or in any manner evicted therefrom. In this we think counsel are mistaken. If there were no other averment, the one that a suit in ejectment was actually commenced and summons served on the appellee, and the further statement that by reason thereof he was unable to conduct the school for which he had leased the room, and was compelled to cease carrying on such school, and that his business was thereby destroyed, would be sufficient. If the appellant desired a more particular statement or specification of the damages, he should have moved to require the defendant to make the pleading more specific in this regard. It seems to us that the paragraph under consideration is in the nature of a counterclaim for damages for a breach of the covenant for quiet enjoyment of the possession of the premises, and, as such, sufficient.

The remaining questions arise upon the overruling of the motion for a new trial. It is insisted by appellant's counsel that the court erred in refusing to give certain instructions requested by appellant. One of the instructions which the appellant requested the court to give, but which was refused, is as follows:

"5. If the defendant subleased a portion of the premises to other parties, who placed therein a steam engine detrimental to the building, and annoying to other tenants of the plaintiff, without his consent or with his consent, upon condition that it would not annoy such other tenants, and such engine proved detrimental to the building and annoying to the other tenants

thereof, and the plaintiff objected to the use of the same therein, and notified the defendant and such sub-tenant to remove the same, and refused to accept of the defendant the rents for the premises while it was maintained therein, and afterwards brought suit in ejectment against the defendant and the sub-tenant using said engine, and the said tenant thereupon, before the action was tried, vacated the premises and the defendant moved his property out of the same, and thereupon the plaintiff dismissed said action, and afterward the defendant tendered him the keys of said building, and offered to surrender the possession thereof to him, and the plaintiff thereupon, by himself or agent, refused to accept said surrender or said keys, this would not constitute an eviction or a surrender of the tenancy or a breach of the implied covenant of quiet enjoyment, and the defendant would be liable for the rents of the unexpired term, whether he actually occupied the premises or not."

The addendum to the written lease, which was agreed to on January 27, 1890, stipulates that Bond shall have the right to sublease to the newspaper named, but it was further expressly provided therein that no steam boiler or engine of any kind should be put into the building by the newspaper management. In the appellant's reply, it is averred that Bond subleased the premises to one Peter M. Gillies, without the knowledge or consent of the appellant, and that Gillies, without appellant's consent, operated a printing office therein and the steam boiler, to the injury of the building.

The evidence is not in the record. Whether Gillies was the proprietor of the newspaper to which Bond was permitted to sublease was not averred in the reply, and the evidence not being in the record, we do not know what the fact is. Ordinarily when the evidence is not in the record error cannot be predicated upon the refusal

of an instruction, as, in the absence of the evidence, it will be presumed that the instruction was refused because of its inapplicability to the evidence. Thornton Juries and Inst., section 164. It will also be presumed in the absence of a showing to the contrary, that correct instructions were given on every material point. Elliott App. Proced., section 722. In the present case, however, the instructions are all in the record, and it is made to appear affirmatively that no instructions were given covering the question raised by the one refused.

The court certified that the instructions requested and refused were applicable to the evidence. R. S. 1894, section 662 (R. S. 1881, section 650); rule 29 of this court. Hence, if under any supposable state of the evidence that could have been adduced under the issues, the instruction could have been correct, it will be presumed that that state did exist. *Rozell* v. *City of Anderson*, 91 Ind. 591. We have a right to assume, therefore, that there was at least some evidence either that the subletting to Gillies or other persons was not that agreed to in the contract, or if it was, that in connection therewith the provision of the contract that no steam engine or boiler should be used was violated.

If the appellee violated the condition of his contract by subletting the premises, or a portion thereof, for a purpose other than that for which the parties provided by their agreement, the appellant either had or had not the right to declare the lease forfeited, and bring an action of ejectment for the premises. Assuming that the lease thereby became forfeited at the option of the appellant, the least that can be said for the appellee is that he had a right to accept the declared forfeiture and surrender the premises.

The instruction does not exclude the hypothesis that while the action in ejectment was pending against both

the tenant and the subtenant, they yielded the possession thereof, as demanded in said suit. The moment that summons in that action was served upon the appellee, it became a demand by the appellant for the possession of the premises, and the appellee had a clear right in response to such demand to yield the possession, and no act of the appellant thereafter without the appellee's consent could restore between the parties their former relation of landlord and tenant. We do not think there was any error in refusing this instruction.

The appellant also requested and the court refused the following instruction: "7. If the defendant subleased the premises to Mr. Gillies without the consent of the plaintiff, the plaintiff had the right by proper action to dispossess Mr. Gillies, and the defendant would be a necessary and proper party to such action, and if the plaintiff brought such action in the form of an action of ejectment, making said Gillies and said Bond parties thereto, this would not justify the defendant in abandoning the premises as upon eviction, and if the said Gillies, after said suit was commenced, moved from the premises, and the complaint was then amended, specifically stating the cause of action and praying judgment for the eviction of said Gillies only, and the cause was then dismissed, this would not constitute an eviction or a breach of the covenant of quiet enjoyment, and would not justify the defendant, either before or after said complaint was amended, in abandoning the premises, and if he did so for that cause, without the knowledge or consent of the plaintiff, and after the cause was dismissed tendered the keys of the premises to the plaintiff and offered to surrender the lease, and the plaintiff refused to accept the same, this would constitute no defense to this action, and, in the absence of any other defense, the plaintiff would be

entitled to recover the rent as agreed upon in the contract until the close of the term, whether the defendant in fact occupied the premises or not."

The theory of this instruction is that the purpose of the action of ejectment was not to dispossess the appellee, but Gillies alone, and that the appellee was simply made a party thereto to answer to his interest. The latter portion of the rejected instruction, however, refutes this theory, for it is assumed in the subsequent portion that after appellee moved from the premises the appellant amended his complaint, so as to specifically state his cause of action against Gillies alone, clearly implying that at first the action was for the purpose of dispossessing both Gillies and the appellee.

What we said with reference to the other charge refused is equally applicable here. As soon as the appellee and his sub-tenant had been served with process in the action for possession, they had a right to regard such suit as an intention on the part of the appellant to declare the lease forfeited, and by moving out of the premises, the appellee but yielded to the implied demand of the appellant to do so. The subsequent refusal of the appellant to receive the keys and the dismissal of his action as to appellee, could not restore the *status quo* between the parties without the consent of both. Nor will the fact that the action was brought so as to dispossess both the appellee and Gillies, without the appellant's authority and by mistake of his attorney, if that assumption can be said to enter into the instruction, aid the appellant. Even if the appellant was ultimately not bound by this act of his attorney, there is nothing in the instruction indicating any knowledge of this want of authority on the part of appellee up to the time he moved his property out of the premises. Moreover, we think if the appellant's attorney made a mistake, the

appellant, and not the appellee must suffer the consequence.     There was no reversible error committed in the refusal to give this instruction.

Upon the subject of the measure of damages the appellant requested the court to instruct the jury as follows:   "6. If you should find that the defendant was unlawfully evicted from the premises or interfered with in the quiet and peaceable possession of the property, his measure of damages would be the difference between the contract price of the rental for the unexpired term and its actual value, if such value was more than the contract price, and in determining such damages you would have no right to consider any profits that the defendant might have made by his school therein, or render him any sum in compensation therefor."

The court gave to the jury the following instruction:  "6. In estimating the amount of damages, if any, which the defendant has sustained by reason of being evicted from the premises leased, if he was so evicted, you may consider the difference, if any, between the rental value of the premises for the unexpired time, and the rent stipulated in the lease, together with such other actual damages as the evidence shows he has sustained, if any, by reason of such eviction, but he cannot recover speculative damages."

Whether the appellee had a right to recover profits on his occupation to which he was entitled by reason of the alleged wrongful eviction, we need not determine. The rejected instruction was wrong in its statements of the elements of damages to which the appellee would be entitled, if he was entitled to any.   The appellee was not confined to the difference between the contract price of the rent and its actual value, but was entitled also to recover expenses for moving his furniture to any other premises he might be able to secure, and perhaps

also to the value of the time actually lost in teaching. When a party requests an instruction and the same is refused, error cannot be predicated upon such ruling unless the instruction refused contain an accurate statement of the law as applicable to the subject of which it treats, and when an instruction asked for, in such a case as this, undertakes to specify the elements of damages that enter into the case, it must embrace all such elements, or there will be no error in the court's refusal to give the instruction.

Doubtless the appellant was entitled to that portion of his charge which stated the law to be that the jury could not award the appellee damages for any profits that he might have made on his school, if the same were uncertain, conjectural or speculative. But he should have requested the court to give a charge which was free from the objectionable feature mentioned.

We have disposed of all the questions directly presented for our consideration, and have not been able to find any reversible error. Other matters incidentally complained of do not demand any special consideration at our hands.

The judgment is affirmed.

Filed January 30, 1896.