## BURDICK TIRE AND RUBBER COMPANY *v.* HEYLMANN ET AL.

### [No. 11,362.   Filed April 4, 1923.]

1. LANDLORD AND TENANT.—*Expiration of Lease.—Lessee Holding Over.—Rights of Landlord.*—By remaining in possession of leased premises after the expiration of his lease, the tenant, being the wrong-doer, gives to his landlord the option of treating him as a trespasser, or as a tenant for another year upon the terms of the original lease, so far as applicable to the new relation.   p. 509.

2. LANDLORD AND TENANT.—*Tenancy for Year.—Termination.— Lessee Holding Over.— Liability for New Term.*— A tenant holding a lease for a term of one year may hold over without obligating himself for another term as fixed by the original lease, if he has an agreement to that effect with his landlord. p. 510.

3. LANDLORD AND TENANT.—*Expiration of Lease.—Lessee Holding Over.—Questions of Fact.*—Where a tenant holds over after the expiration of his original lease, whether there has been an agreement that the tenant may hold over upon terms different from those contained in the original lease is a question of fact. p. 510.

4. LANDLORD AND TENANT.—*Expiration of Lease.—Lessee Holding Over.—Liability for Rent.*—Where tenant corporation occupying a building under a lease for the term of one year continued in possession for several months after the expiration of the original term, a finding that it became obligated to pay rent for the entire year was not error in the absence of an agreement with lessor that the tenant might hold over without incurring such liability, notwithstanding that lessor was a director of tenant company and was present at a meeting of the board of directors when there was a discussion as to the vacation of the premises upon the completion of a new building being erected by the corporation, but no time was fixed for removal. p. 510.

5. LANDLORD AND TENANT.—*Lease.—Construction.—Intention of Parties.*—A written lease must be so construed as to give effect to the intention of the parties, and, in arriving at the intention, the subject matter, the situation of the parties, and the object to be accomplished are to be considered. p. 510.

6. LANDLORD AND TENANT.—*Lease.—Construction.—Covenant as to Condition of Premises upon Surrender.*—A covenant to surrender a building in the same condition as it was at the time of the execution of the lease, natural wear and tear excepted, is not equivalent to a covenant to restore. p. 510.

7. LANDLORD AND TENANT.—*Expiration of Lease.—Installation and Removal of Heating Plant and Machinery.—Liability of Tenant for Damages.*—Where a building was leased for one year for use as an automobile tire factory upon condition that lessee at its own expense furnish a heating plant and make other improvements, but not to the weakening of, or injury to, the walls, and that at the expiration of the lease it would surrender the premises in as good condition as when the lease was executed, natural wear and tear excepted, *held* that on surrender the lessor was not entitled to damages caused by the installation and removal of the heating plant, nor to damages necessarily caused by fitting the building for the use contemplated. p. 512.

8. LANDLORD AND TENANT.—*Lease.—Construction.—Covenant as to Condition of Premises upon Surrender.—Liability for Damages.*—A provision in a lease that the tenant will surrender the leased premises at the expiration of the term in as good

condition as when leased does not require the tenant to make good the depreciation due to such wear and tear as is incident to the use for which the premises were leased.  p. 512.

From Hamilton Circuit Court; *Fred E. Hines,* Judge.

Action by Fred E. Heylmann and another against the Burdick Tire and Rubber Company.  From a judgment for plaintiffs, the defendant appeals.  *Reversed.*

*C. H. McDermott, Charles R. Haller* and *Thomas E. Kane,* for appellant.

*Cassius M. Gentry* and *Frank S. Campbell,* for appellees.

REMY, J.—On December 10, 1917, appellant and appellees entered into a rental contract by the terms of which appellees leased to appellants a certain building for a period of one year, commencing December 31, 1918, at a rental of $150 per month, payable monthly in advance, lessee at its own expense to furnish a heating system, and make other improvements, "but not to the injury or weakening of the walls" of the building; lessee at the expiration of the lease to "surrender" the premises "in as good condition as at present, natural wear and tear excepted."  Appellant leased the building, as appellees knew, for the purpose of conducting therein the business of manufacturing automobile tires, which business made it necessary for appellant to equip the building with suitable machinery for that purpose. Having taken possession of the building under the lease, appellant installed a heating plant and such machinery as was required for the business contemplated.  In the installation of the heating plant and machinery, it became necessary to, and appellant did, cut many holes in the basement, and in the floors and walls, and removed a part of the basement floor, a part of the ceiling, and certain joists supporting the second floor.  During the occupancy of the building by appellant a large number of window glass in the windows of the building were

broken, none of which was ever replaced by appellant. Under the terms of the lease, appellant took possession of, and held, the leased premises for the year 1918, and without notice, and without other agreement as to the time the premises would be vacated, continued in possession for the year 1919, and until May 1, 1920, during all of which time appellant paid rent as provided for in the original lease, which rent was accepted by appellees. After the month of April, 1920, no rent was paid. Having vacated the premises the last of April, appellant, on May 3, 1920, delivered the keys for the building to the house of appellees, which keys were thereafter returned to appellant. Appellee Fred E. Heylmann was a member of the board of directors of appellant company, and as such was present at a meeting of the board in October, 1919, when appellant had in process of construction a new factory building. At this meeting, there was a discussion by some of the directors as to the vacation of the building owned by appellees, and the removal of appellant's machinery to the new building, but no time was fixed for the vacation of appellees' building, or the surrender of the lease. Appellant did not at any time, either before or after vacating the building, repair the damages made necessary by the installation of the heating plant and machinery; nor did it replace the broken window glass, or make any repairs whatever, and did not "surrender the leased premises in as good condition" as the same were at the time appellee took possession thereof, "natural wear and tear excepted." Appellees took control of the premises January 1, 1921, and in February of that year repaired the damages to the building caused by the installation of the heating plant and machinery, and made all other repairs necessary to restore the building, so that it was in as good condition as it was at the time appellant took possession, natural wear and tear excepted. The fair

and reasonable value of the labor and material necessary to make all of the repairs was $877.

This action is by appellees against appellant for rent and for damages for failure to repair and to restore the leased premises. By a special finding, the trial court found the above facts, and stated thereon its conclusions of law. Conclusions numbered 2, 3 and 4 are, in substance, as follows: (2) By holding over, and by the payment of rent for the months of January, February, March and April, 1920, appellant became obligated to pay rent for the entire year of 1920, upon the terms of the original lease; (3) appellees are entitled to recover rent from May 1, 1920, to Deecmber 31, 1920, at the rate of $150 per month; (4) that appellees are entitled to recover damages on account of appellant's breach of the covenant of the lease to surrender the premises at the expiration of the lease in as good condition as the same was when appellant took possession, natural wear and tear excepted, in the sum of $877.

Appellant's motion for a new trial was overruled, and judgment was rendered in accordance with the court's conclusions of law. Errors assigned and relied upon for reversal are that the court erred in each of its conclusions of law, and in overruling the motion for a new trial.

It is urged by appellant that, under the facts found, appellant's holding over from December 31, 1919, to May 1, 1920, did not create a new tenancy for the year ending December 31, 1920, and that, therefore, the court erred in its conclusion of law numbered 3. It is well settled that by remaining in possession of the leased premises after the expiration of his lease, a tenant, being the wrong-doer, gives to his landlord the option of treating him as a trespasser, or as a tenant for another year upon the terms of the original lease so far as they are applicable to the new rela-

tion.  *Tolle* v. *Orth* (1881), 75 Ind. 298, 39 Am. Rep. 147; *Bright* v. *McOuat* (1872), 40 Ind. 521, 526; *Clinton Wire Cloth Co.* v. *Gardner* (1881), 99 Ill. 151.

Appellant does not controvert this rule, but insists that the legal presumption that a new tenancy was created by reason of appellant's holding over is rebutted by the court's finding that appellee Fred E. Heylmann was a member of the board of directors of appellant company, and was present at a meeting of such board in October, 1919, when there was a discussion by some of the directors as to the vacation of appellees' building, and a removal by the company to a new building to be erected by appellant. It is, of course, the law that a tenant, holding a lease for a term of one year, may hold over without obligating himself for another term as fixed by the original lease, if he has an agreement to that effect with his landlord. *Moore* v. *Harter* (1902), 67 Ohio St. 250, 65 N. E. 883. Whether there has been an agreement between the landlord and tenant that the tenant may hold over upon terms different from the original lease is a question of fact. *Weber* v. *Powers* (1904), 213 Ill. 370, 72 N. E. 1070. In the case at bar, the trial court merely found that, in the presence of one of the lessors, there had been a discussion by some of the directors of appellant company as to the vacation of the building, but that no time for the vacation was fixed. The court did not find that there was any agreement whatever between appellant and appellees as to appellant's holding over till the contemplated new building was completed. The court did not err in its second conclusion of law.

It is apparent from the facts found and the conclusions of law stated, that the court included in the judgment all expenses incurred by appellees in repairing holes in the floors and walls, and in repairing defects in the building caused by in-

stalling the heating plant and the machinery to be used in the manufacture of tires, so as to restore the building to its exact former condition, as nearly as could be. Exceptions to conclusion of law numbered 4 presents the question as to whether or not, under the lease and other facts found, the court was authorized to include in the judgment the costs of such repairs. The answer to this question will involve a construction of the lease. A written lease, like other agreements, must be so construed as to give effect to the intention of the parties; and in arriving at the intention of the parties, the subject matter, the situation of the parties, and the object to be accomplished, are all to be considered. *Barrett* v. *Johnson* (1891), 2 Ind. App. 25, 27 N. E. 983; *Howeth* v. *Anderson* (1860), 25 Tex. 557, 78 Am. Dec. 538; *Burgener* v. *O'Halloran* (1920), 111 Misc. Rep. 203, 181 N. Y. Supp. 235. In the lease under consideration, it is stipulated that appellant should furnish its own heating system, and at its own expense "make other improvements, but not to the injury or weakening of the building;" and that at the expiration of the lease, appellant should have the privilege of removing the heating plant. The lease also contained the covenant that at the expiration of the term appellant must surrender the property "in as good condition as at present, natural wear and tear excepted." It will be observed that there is no covenant to repair or restore the building. The covenant to surrender the building in the same condition as it was at the time of the execution of the lease, natural wear and tear excepted, is not equivalent to a covenant to restore. *Wainscott* v. *Silvers* (1859), 13 Ind. 497. In fact, the covenant to "surrender the building at the expiration" of the lease "in as good condition as at present, natural wear and tear excepted," is but the expression of an obligation on the part of appellant which the law would have implied if it had been omitted from

the lease. *Warren* v. *Wagner* (1883), 75 Ala. 188, 51 Am. Rep. 446; *Carlin* v. *Ritter* (1888), 68 Md. 478, 13 Atl. 370, 16 Atl. 301, 6 Am. St. 467.

Appellees knew that the building was to be used as a place for the manufacture of tires, and leased it for that purpose, agreeing that such improvements might 7, 8. be made as would not weaken the building. From the finding of facts, it is clear that the improvements referred to in the lease had reference to fitting the building for the use for which it was being leased. Appellees also knew that a heating plant was to be installed, and had agreed that the same might be removed at the expiration of the lease. Appellees must have known that to install the heating plant and the machinery contemplated would necessitate the cutting of holes in the walls, floors and ceiling, and require some changes in the building. If not, why should there have been the stipulation that the walls were not to be weakened? It is significant that the court did not find that the walls of the building were weakened by the changes made necessary by installing the heating plant and the machinery required for the manufacturing of tires. The failure to find that the walls had been weakened by the changes made, is equivalent to a finding that the walls were not weakened. If it had been the intention of the parties that the building should in all things be restored to its condition at the commencement of the lease, a covenant to that effect should, and doubtless would, have been inserted in the lease contract. We hold that under the lease and other facts found by the court, appellees were not entitled to recover damages necessarily caused by the installation and removal of the heating plant, nor to damages necessarily caused by fitting the building for the use contemplated by the parties when the lease was executed. *Kann* v. *Brooks* (1913), 54 Ind. App. 625, 101 N. E. 513; *Marks* v. *Chapman* (1917), 135 Iowa 320, 112

N. W. 817; *In re International Milling Co.* (1909), 175 Fed. 308. It is the law in this state that a provision in a lease that the tenant will surrender the premises at the expiration of the term in as good condition as when leased, does not require the tenant to make good the depreciation due to such wear and tear as is incident to the use for which the premises were leased. *Jennings v. Bond* (1896), 14 Ind. App. 282, 42 N. E. 957.

The trial court erred in its conclusion of law numbered 3.

In as much as it is impossible to know from the facts found by the court just how much of the damages included in the judgment was for expenses incurred in repairs made necessary by installing the heating plant, and by changes made necessary in fitting the building so that it would be suitable for the manufacture of tires, it will be necessary to grant a new trial.

Judgment reversed, and new trial ordered.