MARY A. HILL *vs.* TRYPHENIA N. HAYES.
FREDERICK P. HILL *vs.* SAME.

Suffolk. March 19, 1908. — June 17, 1908.

Present : KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Landlord and Tenant*, Liability of landlord to third person. *Covenant of Lessee.*
*Nuisance.* *Practice, Civil*, Issues for jury.

If the owner of real estate leases it with a nuisance upon it, of which he knows or ought to know, and takes no agreement from the tenant to abate the nuisance, he is liable to a third person who when exercising due care suffers injury from the nuisance.

In an action against the owner of a building leased to a tenant, for personal injuries caused by the defective condition of the cover of a coal hole in the sidewalk adjoining the defendant's building and used in connection with it, where it is material for the plaintiff to show that the defect existed at the time the lease

was made, and no one testifies from actual observation made at that time as to the condition of the coal hole then, the plaintiff can show its defective condition before the time of the letting and that this condition was substantially the same up to the time of the accident.

If the owner of a house leases it when the coal hole in the adjoining sidewalk used in connection with the house is in such a condition as to constitute a nuisance, and there is no way to make the coal hole proper and safe for 'travellers except by putting in a new casting or covering or a new pin, and the owner through his agent, having been notified of the defective condition of the coal hole, makes an attempt to have it repaired but does not furnish a new cover or a new pin and leaves it in a condition dangerous for public travel, and the lease contains no provision requiring the tenant during the term to put or keep the premises in any condition other than that in which they were at the beginning of the term, the owner is liable to a traveller who in the exercise of due care is injured from falling into the coal hole by reason of the defective cover.

Where a lease contains a covenant by the lessee that he will keep the premises in as good condition as they are in at the commencement of the term or may be put in by the lessor during the continuance thereof, and also covenants that he will at the expiration of the term " yield up " the premises to the lessor " in good tenantable repair in all respects, reasonable wear and use thereof and damage by fire and other casualties excepted," the last named covenant does not impose upon the lessee the duty of keeping the premises in good tenantable repair during the term. It is fulfilled if they are yielded up in that condition at the end of the term, and, if there is a nuisance on the premises at the time the lease is made, this covenant does not require the lessee to abate it until at least just before the end of his occupancy.

It is within the discretion of a presiding judge to submit proper special questions to the jury.

HAMMOND, J. These two actions were tried together. In the first the plaintiff sought damages for injuries suffered from a fall into a coal hole in a sidewalk adjoining land of the defendant; and in the second her husband sought to recover damages for the loss of his wife's services by reason of the fall. After a verdict for the plaintiff the case is before us upon exceptions taken by the defendant at the trial. The exceptions are the same in each case, and, since the second case must stand or fall with the first, we shall speak only of the first. No question seems to have been made about the plaintiff's due care. The real controversy arose as to whether the coal cover was defective so as to make the spot dangerous to public travel, and whether if it was, the defendant was answerable.

The coal hole was used in connection with the premises of the defendant which at the time of the accident which occurred on May 8, 1903, were, and for more than two years before that had been occupied by one Howard as a tenant of the defendant.

The jury were distinctly and carefully told that in order for the plaintiff to recover she must show (1) that the premises were defective with respect to the coal hole at the time they were leased to Howard, which was January 8, 1901, and that they were defective with respect to the coal hole so as to be dangerous to public travel, (2) that they remained " that way " up to the time of the accident, and (3) that the defendant knew it or ought to have known it ; and that a failure of the plaintiff to prove any of these three propositions would be fatal to her case. The jury were further instructed that as bearing upon the question whether the defect, if any, had remained the same continuously up to the time of the accident they might consider the evidence as to the repairs in 1901. At the close of the charge four questions were submitted to them to be answered in the event that they found for the plaintiff. It appears by the written answers that the jury found that at the time of the lease to Howard the coal hole being within the street limits was in such a condition as to constitute a nuisance, that there was no " way to make the coal hole proper and safe for travel except to put in a new casting or covering, or a new pin," that the defendant or her agent made an attempt to have it repaired, but that such attempt did not make it safe for travel.

The first contention of the defendant is that there was no evidence tending to prove the first proposition above named, namely, that at the time the premises were leased to Howard the nuisance existed. Upon this the case is close. Nobody testified from actual observation made at that time as to its condition then, and the plaintiff was compelled to resort to other evidence. She undertook to prove this part of her case by showing, so far as she could, the condition of the coal hole from a time antedating the lease up to the time of the accident, as bearing upon its condition at the time of the letting.

The lease, as before stated, was made on January 8, 1901. Harriet M. Brown testified that she occupied these premises from April, 1899, to January 1, 1900; that during that time she remembered but one coal hole, the one in front of the front steps ; that this coal hole was called to her attention because of the fact that " it sort of cracked when you stepped on it, or perhaps you would say rattled " ; that " it was so right straight

along." Mildred P. Stomm testified that she went to live on the premises in December, 1900, and stayed there two years and a half; that "she had examined and noticed the coal hole, . . . that shortly after she went to live there she noticed the coal hole rattled; that it was loose; that . . . some time in 1901, in the early fall, . . . the next day after a little girl had stepped into the coal hole she examined the coal cover": that "the cover was broken"; . . . that at this time there was no pin through the two little ears on the rim of the coal cover; that she kicked it up; stepped ón the side of it, and it would slide out of the rim." She further testified that on the same day she told Mr. Gulesian (who was the person to whom the rent was paid and whom the jury might have found to be the agent of the defendant) that a little girl had stepped into the coal hole " and would he attend to having it repaired; that he said he would; that that night there was some one there who did something to the coal hole cover; that after that she noticed it rattled and noticed how it was repaired; that it was repaired by hanging a weight on the bottom on the lower side; that the weight was attached to the cover by a string; . . . that from that time up to May, 1903, she observed this cover very frequently; that during that time she did not notice any change in its condition; that on May 8, 1903, she made an examination of the cover and noticed there was no pin there." Charles M. Howard, to whom the lease was given in January, 1901, testified that he lived on the premises from December, 1900, to November, 1903; that the coal hole " was called to his attention during the first year he was there; that it rattled a little; that during the first year at some time he examined it and saw that it was rather loose; that the bolt or rod that went through the hinge was not in place and that the cover was loose and rattled; that there was nothing to hold the cover down; that some time afterward there was a weight put on it; . . . that he took a lantern and looked at it from beneath; that whenever he was at home and there was coal put into the cellar he would take care of the hole and would look after it, as he was afraid somebody might get in there; that quite often he went out with the tea kettle and thawed the ice around it, and saw that it was in place, and that at those times there was no pin there; that while he was there he never ordered

any repairs down on the coal hole and never paid for any ; that after May 8, 1903, he examined the cover and that he found the same conditions ; that it wasn't tight and was loose and there was no pin there."

There was evidence that one Miss Walley fell into the hole in September, 1901 ; that the cover tipped up as she stepped upon it. Albert Moran, a policeman, testified that after the accident he went with Mr. Hill to this coal hole and examined the cover closely ; that Mr. Hill " trod on it and pushed it, and the effect of his treading and pushing was to push it out of place ; that he [the witness] tried it two or three times but didn't push it out of place ; that there was a certain place on the right side of it that you had to touch." The evidence as to whether the cover was cracked and whether it rattled was conflicting. But no witness testified to ever seeing the pin, if any there was, in its proper place.

It is unnecessary to review in detail the evidence as to the mechanical structure of this cover. It is sufficient to say that it warranted a finding that the only way to make the coal hole proper and safe for travel was to put in a new casting or covering, or a new pin.

Upon all the evidence we think that the jury were warranted in finding that while a person might step upon the cover and not displace it, still, if one stepped upon a certain part of it, it was likely to fly up and was therefore dangerous to public travel ; that this was the condition at the time the premises were leased to Howard ; and that this condition was substantially the same up to the time of the accident.

It does not appear that at or before the time of the letting the defendant ever made or caused to be made any examination whatever of the coal hole ; and the jury were warranted in finding that in view of the danger to the public, the construction of the coal cover, and its "rattling" symptoms, the defendant knew, or in the exercise of due care would have known, the condition.

We have then a case where a landlord negligently lets premises, abutting upon a way, which are from their condition dangerous to persons lawfully using the way, and where the danger consists not in the way the premises are used by the tenant but

in the permanent condition of the premises. It is not a case like *Frischberg* v. *Hurter*, 173 Mass. 22, where the cover itself was in good condition but the tenant failed to fasten it properly. It must be classed with cases like *Dalay* v. *Savage*, 145 Mass. 38.

Nor does the lease take the case 'out of the rule. It is to be noted that the lease was for one year with a right in the lessee to extend it for an additional term of two years upon giving notice to the lessor. The legal effect was that the term was either one or three years at the option of the lessee. While there does not appear any direct evidence that the lessee gave the formal notice required by the lease, still the defendant testified that neither at the end of the first year, nor just before, nor just after, did the lessee say anything about the expiration of the lease or have any talk with her " about the tenancy other than is expressed in the lease." The case appears to have been tried, by the defendant at least, upon the theory that the term had been extended the additional two years, so that at the time of the accident Howard was in as tenant under the lease. In the defendant's brief it is said as a part of the statement of the case that at the time of the accident the premises were " under the control, of one Charles M. Howard who held under a lease," which is the lease in question. As this is manifestly the view most favorable to the defendant, we assume in her favor that at the time of the accident to the plaintiff, Howard the tenant was in control of the premises under this lease.

The lessee did not agree to keep the premises in any other condition than that in which " the same are in at the commencement of the term, or may be put in by the said lessor or her representatives during the continuance thereof." It is true that the lessee covenants that he will at the expiration of the term " yield up " the premises to the lessor " in good tenantable repair in all respects, reasonable wear and use thereof and damage by fire and other casualties excepted." But this last covenant does not impose upon the tenant the duty of keeping the premises in a tenantable condition during the term. It is fulfilled if they are yielded up in that condition at the end of the term. Neither of these covenants calls upon the tenant to abate the nuisance until at least just before the end of the occupancy. See *Nugent*

v. *Boston, Concord & Montreal Railroad,* 80 Maine, 62; *Reed*
v. *Snowhill,* 22 Vroom, 162. It appears therefore that the de-
fendant let the premises with a nuisance upon them and took no
agreement from the tenant to abate the nuisance. She therefore
must be held.

The exceptions to the admission of evidence must be over-
ruled. The various descriptions of the coal hole were admissi-
ble as bearing upon its condition at the time of the lease, and
also upon the question whether the same defect which existed
at that time continued up to the time of the accident. The evi-
dence in this connection of the conversation between the witness
Stomm and Gulesian was admissible as bearing upon the question
whether the repairs if any which followed upon that conversa-
tion were made by the defendant's authority or by third parties.
It does not appear that the defendant excepted to the admis-
sion of any of the conversations between Mrs. Howard and
Gulesian.

It was within the discretion of the presiding judge to submit
to the jury proper questions, (*Boston Dairy Co.* v. *Mulliken,* 175
Mass. 447,) and these questions were proper.

At one time during the charge the presiding judge said that
if the defect existed at the time of the lease and the defendant
knew it then or subsequently, she would be liable. To this the
defendant excepted. The answer to this exception is that in a
subsequent part of the charge this statement was withdrawn so
far as it permitted the defendant to be held simply by reason of
knowledge acquired after the letting, and the case was finally
sent to the jury under the instructions stated in the early part
of this opinion.

We see no error in the way in which the judge dealt with the
twenty-nine rulings requested by the defendant. It will serve
no useful purpose to go over them in detail. The law governing
the case was plainly stated to the jury in a manner sufficiently
favorable to the defendant, and the instructions were sufficiently
full. In each case the order must be

*Exceptions overruled.*

*D. V. McIsaac,* for the defendant.
*A. T. Smith,* for the plaintiffs.