EDMUND D. CODMAN & another, trustees, *vs.* HYGRADE FOOD PRODUCTS CORPORATION.

Suffolk. November 4, 1935. — September 8, 1936.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & QUA, JJ.

*Landlord and Tenant,* Construction of lease, Lessee's duty to repair. *Contract,* Construction. *Evidence,* Relevancy. *Words,* "In good tenantable repair," "In good condition."

Covenants by a lessee of a building that he would keep the premises "in such repair as the same are in at the commencement of said term . . . the same being admitted to be in good condition at the time of the execution of" the lease, and at the end of the term would yield them up "in good tenantable repair in all respects reasonable wearing and use thereof and damage by fire and other casualties excepted," meant that, in ascertaining the actual condition of the building in respect to "good tenantable repair" existing when the term began, its age and character, the uses to which it was adapted and the uses which it was contemplated the lessee would make of it controlled and determined the condition as to "good tenantable repair" in which the building was required to be when delivered up to the lessor at the end of the term, except as to the effect of reasonable wearing and use.

At the trial of an action on a lessee's covenant to keep the leased premises "in such repair·as the same are in at the commencement of said term . . . the same being admitted to be in good condition at the time of the execution of" the lease, and at the end of the term to yield up the

premises "in good tenantable repair in all respects reasonable wearing and use thereof and damage· by fire and other casualties excepted," evidence was admissible of the age of the building and as to its use and condition previous to and at the time when the lease was executed.

CONTRACT. Writ in the Municipal Court of the City of Boston dated October 6, 1933.

Upon removal to the Superior Court, the action was tried before *Macleod*, J. There was a verdict for the defendant. The plaintiffs alleged exceptions.

· *I. H. Y. Muchnick*, for the plaintiffs.

*A. Brayton*, for the defendant.

DONAHUE, J. The plaintiffs gave to the defendant a written lease of a business building for the term of one year beginning January 1, 1932. After the term had ended and the defendant had vacated the building, the plaintiffs brought this action to recover damages for the alleged breach of a covenant in the lease which provided that the defendant would "at the expiration of said term peaceably yield up unto the Lessor . . . the premises and all future erections and additions . . . in good tenantable repair in all respects reasonable wearing and use thereof and damage by fire or other casualties excepted . . . ." A preceding covenant in the lease provided that the defendant would "keep . . . the said premises . . . in such repair as the same are in at the commencement of said term, or may be put in by the Lessor during the continuance thereof damage by accidental fire or inevitable accidents only excepted the same being admitted to be in good condition at the time of the execution of these presents . . . ."

The case was tried in the Superior Court before a jury and there was a verdict for the defendant. The plaintiffs excepted to the admission of evidence as to the age of the building and as to its use and condition prior to and at the time of the execution of the lease. The judge gave a request of the plaintiffs for instructions which read: "The defendant having admitted the premises to be in good order and condition at the execution of the lease . . . said defendant is estopped now to deny said premises were in good condition." He qualified this, however, by instructing the jury

in substance that the words "in good condition" and "in good tenantable repair" were not words of such narrow and technical meaning as to be self-explanatory, that they were to be considered in the light of the circumstances and conditions existing at the time of the execution of the lease and that the jury were to determine the sense in which the words were used by the parties. To this the plaintiffs excepted. All the plaintiffs' exceptions are based on their contention that the defendant was obligated to surrender the premises at the end of the term in good tenantable repair regardless of their actual condition at the time the term began.

The evidence warranted the finding of the following facts. The building was at least ninety-six years old and for twelve or more years prior to the execution of the lease to the defendant it had been occupied by tenants who conducted there the business of manufacturing sausage. That was the use of the building by the defendant contemplated by the parties when the lease was given and that was the purpose for which the defendant in fact used it. Dampness in the building and the presence of some water on the floors were necessarily incident to the use of the building for the conduct of that business. At the time of the delivery of the building to the plaintiffs at the end of the defendant's tenancy some timbers and floor joists in the building were rotted, the floors in places were warped and cracked, some of the beams were saturated with water and the metal ceilings were in places rusted. The plaintiffs introduced evidence that in order to make the building fit for occupancy and tenancy it would be necessary to remove two of the floors of the building, to replace rotted timbers and to do other things at a total cost of about $5,500. Counsel for the defendant stated at the trial that the defendant did not dispute the testimony of witnesses describing the actual condition of the premises at the end of the term. The defendant introduced evidence to the effect that the cost of remedying the conditions existing would be very much less than the amount testified to by witnesses called by the plaintiffs. There was evidence from which it could have

been found that the conditions above described were substantially the same at the beginning as at the end of the term.

The lease imposed on the defendant no obligation to make specified repairs, but two of its covenants deal with the matter of the state of repair of the building. One required the lessee during the term of the lease to keep the premises in such state of repair as existed at the beginning of the tenancy, it being stated in the lease that it was admitted that the premises were then "in good condition." The other covenant required that when delivered up at the end of the term the premises should be "in good tenantable repair."

The phrases "in good tenantable repair" and "in good condition" appearing in such a lease do not have a fixed or technical meaning which is always the same regardless of the character or use of the building to which they refer. A building adapted for use as a tannery might be in good tenantable repair or condition for that purpose and absolutely untenantable for use as a watch factory. In the application of phrases of such general significance to a building which is the subject matter of a lease various things are to be taken into account. Among these are the character of the building and of its original construction, *Judkins* v. *Charette*, 255 Mass. 76, 82; the use to which the building is to be put and the character of a business there to be carried on, *Kaplan* v. *Flynn*, 255 Mass. 127, 130; the age of the building and its general capacity for use at the time the lease is given, *Drouin* v. *Wilson*, 80 Vt. 335; *St. Joseph & St. Louis Railroad* v. *St. Louis, Iron Mountain & Southern Railway*, 135 Mo. 173; *Lehmaier* v. *Jones*, 100 App. Div. (N. Y.) 495; *Lister* v. *Lane & Nesham* [1893] 2 Q. B. 212; *Lurcott* v. *Wakely & Wheeler* [1911] 1 K. B. 905, 916; and the class of tenant and the kind of business of a tenant who would be likely to lease the building. *Miller* v. *McCardell*, 19 R. I. 304. *Proudfoot* v. *Hart*, 25 Q. B. D. 42.

Words used in covenants in a lease relating to the state of repair of a building "are to be interpreted as words used in written instruments commonly are interpreted in accord-

ance with general usage and understanding," *Cawley* v. *Jean*, 218 Mass. 263, 269, and "in the light of the facts to which they apply and the circumstances in which they are used." *Boston Molasses Co.* v. *Molasses Distributors Corp.* 274 Mass. 589, 594. In the present case, to apply the phrase "in good tenantable repair" to the building let, some consideration must be given to its age and structural character, the uses to which it was adapted, the use which it was contemplated the defendant would make of it, the class of tenant who would be likely to lease it and the kind of business such tenant would be likely to carry on there.

There was evidence warranting the finding that the presence of decay in the timbers and the general conditions resulting from the uses to which the building had been put were known to the parties when the lease was executed, that at the end of the term, disregarding the effects of reasonable wearing and use during the term, its state of repair was not substantially different from the condition existing when the tenancy began and that the building was at the end of the term "in good tenantable repair" within the meaning of those words which it might have been found the parties intended.

It is proper in the construction of the language of a lease to read together different provisions therein dealing with the same subject matter, and where possible all the language used should be given a reasonable meaning. *Ball* v. *Wyeth*, 8 Allen, 275, 278. *Weeks* v. *Wilhelm-Dexter Co.* 220 Mass. 589, 592. *Judkins* v. *Charette*, 255 Mass. 76, 82. *Welch* v. *Gordon*, 284 Mass. 485, 487.

The statement in the lease to the effect that it was admitted that the premises were "in good condition" at the time of the execution of the lease cannot be construed as defining or affecting the standard of performance of that covenant which expresses the obligation of the defendant as to keeping the premises in repair during its tenancy. The standard there set is the actual state of repair, whether good or bad, in which the premises were at the time of the letting, not a degree of repair measured by the abstract standard of goodness. The language expressing the admission cannot

reasonably be given effect if read only in connection with the covenant as to keeping the premises in repair during the tenant's occupancy.

The covenant on which the present action is based required that the defendant should deliver up the premises at the end of the term "in good tenantable repair." That phrase, taken by itself, expressed a standard of performance of the covenant in terms of tenantability, not by a comparison with an actual state of repair which had once existed. It is manifest, however, that the words "in good tenantable repair" were not intended to be taken in an absolute sense. The covenant would not necessarily be broken if, at the time of delivery to the lessors, the building was not in fact in good tenantable repair. For the covenant further provides that any effect, on the then existing state of repair, of reasonable wearing and use by the tenant is to be disregarded in determining whether or not the building was, at the time of delivery, in good tenantable repair. The determination whether a state of disrepair apparent in a particular part of the building was caused in whole or in part by reasonable wear and use during the tenant's occupancy would ordinarily involve the consideration of the state of repair of that same part of the building when the occupancy began. As qualified by the exception the standard of performance expressed in the covenant is somewhat indefinite.

When, however, this covenant is read with the earlier admission in the lease that the premises were "in good condition" at the time of its execution, uncertainty as to the meaning of the phrase "in good tenantable repair" disappears and all the language of the lease respecting the condition of the premises as to repair may be given significance. Thus read, the intention of the parties is adequately manifested that the actual condition of the building in respect to good tenantable repair existing when the term began should be the condition as to good tenantable repair in which the building was required to be when delivered up to the plaintiffs at the end of the term, except as to the effect of reasonable wearing and use. This we think to be the reasonable construction of the language of the lease.

By the use of clear and unmistakable language the obligation could have been put upon the defendant before the delivery of the premises at the end of the one year term to make the extensive repairs and reconstruction required to remedy conditions resulting from use of the building for many years by earlier tenants. We do not think that this construction of the language in fact used, for which the plaintiffs in effect contend, was reasonable or required. There was no error in admitting the evidence or in giving the instructions to which the plaintiffs excepted.

*Exceptions overruled.*