**SINGER et al. v. UNITED STATES.**
No. 50146.

United States Court of Claims.
Oct. 6, 1953.

Joseph W. Sharts, Richmond, Va., for plaintiff.

Robert M. Brown, Dayton, Ohio, for third party plaintiff.

Herbert Pittle, Washington, D. C., Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

JONES, Chief Judge.

Plaintiff brings this suit under the Tucker Act, 24 Stat. 505, Title 28 United States Code, § 1491, seeking to recover $10,000 which he claims by virtue of defendant's alleged breach of a lease. Plaintiff's grantor, Mrs. Amelia Herr Bickham, has intervened as third party plaintiff adopting as her own plaintiff's petition and evidence and asserting that if plaintiff cannot maintain this action, then she is entitled to judgment for the $10,000 claimed. By stipulation in open court the two plaintiffs ask that judgment be rendered for either or both of them jointly or severally.

The lease arrangement giving rise to this action was a part of the Government's wartime Homes Conversion Program, which was designed to alleviate the critical shortage of housing in areas congested by an influx of war and defense workers employed in various defense projects. Under that program the defendant, through the National Housing Agency, leased large, old dwellings; remodeled, reconditioned, and converted them into apartments or multiple family units at its own expense; and agreed to return the properties to the owners in the modified condition at the termination of the lease.

It was under this program that defendant and the third party plaintiff (hereinafter Mrs. Bickham) executed a contract of lease on January 20, 1944, by the terms of which defendant leased the premises known as 226–228 North Robert Boulevard, Dayton, Ohio. This building was erected in 1895. The record shows that the basement and first floor were inundated by flood waters from the Miami River in 1913, and in 1936 a fire occurred in the premises, doing considerable structural damage. Except for the repairs made necessary by flood and fire, no major alterations or improvements were made prior to this lease. The term began on the date of the lease and expired January 19, 1951. Under the agreement defendant paid $300.36 annual rent and assumed mortgage payments amounting to $1,008 per annum. Paragraph 4 [1] of the lease reflects the arrangement summarized above, and pursuant thereto the defendant remod-

---

[1] "The Government, during the term of this lease, may build, rebuild, remodel, recondition, rehabilitate, convert, change, and alter the Premises, and install and maintain additions and structures thereto, including internal and external changes, and may change the number of living units in the Premises and attach fixtures thereto, and make any and all improvements thereto, including utilities and roads, at the expense of the Government: *Provided, however*, That these rights may be exercised in accordance with plans and specifications submitted to and approved in writing by the Lessor. The Government may make such reasonable variations from, and modifications in, such plans and specifications originally approved by the Lessor as the Government deems necessary in the course of carrying out such plans and specifications. All such building, rebuilding, remodeling, reconditioning, rehabilitating, converting, changing, and altering of the Premises, and all additions, structures, and fixtures added to the Premises, by the Government, including utilities and roads, which are remaining thereon at the termination of this lease, however accomplished, or when the Government begins reconversion of the Premises, shall then become the property of the Lessor; and the Government shall be under no obligation to restore or reconvert the Premises to their condition at the time of the execution of this lease: *Provided, however*, That in the event the Government determines to terminate this lease, *except* where such termination is in pursuance of an election made by the Government under the provisions of paragraph 10 hereof, and the conversion of the Premises has been actually commenced but has not been completed, the Government at its sole option, before such termination becomes effective, shall either complete the con-

eled and reconditioned the premises, converting them from a single two-family dwelling consisting of 20 rooms into a multiple family apartment house containing ·ten apartments. The conversion cost $13,393 and included new concrete work; new carpentry; new lathing, painting, and plastering; new linoleum; new heating, plumbing, and electrical work; and eight new kitchens and bathrooms completely equipped.

Following this conversion of the premises they were turned over to a private real estate broker, who acted as a contract management broker in managing the property for defendant. In this capacity it was the broker's duty to rent the individual apartments, collect the rentals for the account of the United States, make certain repairs, and otherwise manage the property. The property was handled in this manner until the lease was terminated on January 19, 1951.

On December 22, 1950, Mrs. Bickham conveyed both the fee simple title to the premises here involved and, by separate instrument, all her right, title, and interest in the above lease to plaintiff for a consideration of $23,500. Signed, notarized, and witnessed notices of the above transactions were sent to defendant by both Mrs. Bickham and plaintiff.

On January 19, 1951, the defendant vacated the premises and delivered possession to the plaintiff. After defendant's refusal to make various repairs requested by plaintiff, this claim for $10,000 damages was filed, based on the alleged failure of defendant to take good care of the premises and to restore and repair them as provided in the lease. Details of the damages claimed are set out below. In addition to the questions of fact relating to the physical condition of these premises at various times, this case presents questions of law as to the extent of defendant's duty to repair the property under the lease and, assuming that a breach is found, whether or not the antiassignment statute precludes recovery. We shall deal with these questions in the order of their enumeration.

It is plaintiff's contention that the lease placed on the defendant an unqualified obligation to make any and all repairs necessary to keep the premises in good order and repair, and further that inasmuch as ordinary wear and tear was not explicitly excepted from the terms of the lease, any such depreciation is also the responsibility of the Government. The defendant takes the position that the lease merely prohibits the commission of waste.

██ We do not concur in either of these constructions. In construing and interpreting this instrument it should be borne in mind that leases, like other contracts, are to receive a reasonable interpretation that will effectuate the intention of the parties. National City Bank of Cleveland v. Citizens Building Co. of Cleveland, Ohio App., 74 N.E.2d 273. In ascertaining this intent it is not improper to consider the situation of the parties, the subject matter involved, and the object the parties had in view and intended to accomplish. Burdick Tire & Rubber Co. v. Heylmann, 79 Ind. App. 505, 138 N.E. 777. See, generally, 45 A.L.R. 12. These precepts would seem in point because of the ambiguity before us.

The controversy centers around the extent of repairs required of defendant by paragraph 9 of the lease quoted below. We italicize the only language which, as we construe the instrument, is mandatory.

version or restore or reconvert said Premises to their condition at the time of the execution of this lease; and *Provided further*, That in the event this lease has been terminated, except where such termination is effected under the provisions of paragraph 10 hereof, the Government shall restore or reconvert said Premises whenever the changes and alterations therein have been of a temporary nature and have been designated as such in the plans and specifications approved by the Lessor. The Government agrees to hold the Lessor harmless of and from all liens by reason of any building, improvements, alterations, repairs, reconversion or restoration."

Paragraph 9 of the lease provides:

"The *Government*, during the term of this lease, *shall take good care of the Premises*, and may make any and all repairs, both interior and exterior, necessary to keep the Premises in good order, condition, and repair, without the consent or approval of the Lessor. *Upon the surrender of the Premises by the Government, it shall redecorate and/or repaint the vacant portion of the interior thereof.*" [Emphasis added.]

The language on which the plaintiff relies to hold the defendant responsible for any and all repairs is preceded by the word *may* and followed by the phrase *without the consent or approval of the Lessor.* It would seem apparent that this language is at best permissive, merely giving the defendant a *right* to repair *without first obtaining the consent of the owner.*

 That the parties contemplated the necessity for making some repairs as a part of the "good care" requirement of the lease is evidenced by this provision permitting the lessee to repair without the consent of the lessor, otherwise the provision is meaningless. It does not necessarily follow, however, that there was an intention to hold the lessee responsible for all deterioration, making it obligatory that the premises be returned with the improvements in as good condition as when they were first completed by the Government. This is what plaintiff's construction of the lease would require, and we think it unreasonable. In view of the purpose for which this rather unusual leasing arrangement was entered into and the language employed in the instrument, we conclude that the undertaking to take good care merely imposed a duty to return the premises in a condition reflecting good husbandry, having taken such action as might be required to offset any abnormal deteri-

oration of the premises during the term of the lease. City of New York v. United States, 97 F.Supp. 808, 119 Ct.Cl. 769, 793, and cases there cited. In determining the degree of deterioration to be regarded as normal wear and tear the age and character of the building is a factor to be considered. Kaplan v. Flynn, 255 Mass. 127, 150 N.E. 872, 45 A.L.R. 6; Judkins v. Charette, 255 Mass. 76, 151 N.E. 81, 45 A.L.R. 1; Codman v. Hygrade Food Products Corp., 295 Mass. 195, 3 N.E.2d 759, 106 A.L.R. 1354. On the basis of these criteria the commissioner has found that the following repairs were made necessary by defendant's failure to take good care of the property:

| | |
|---|--:|
| Gutters and downspouts | $215.00 |
| Repairs to rear porch | 90.00 |
| Repairs to interior stairs | 40.00 |
| Repairs to front porch | 175.00 |
| Repairs to basement doors | 20.00 |
| Repairs to hot water heaters | 45.00 |
| Repairs to plaster | 75.00 |
| Repairs to floor tile | 10.00 |
| Repainting exterior trim | 200.00 |
| Total | $870.00 |

Plaintiff's strenuous exceptions to this finding have been carefully considered, but we do not feel that the record justifies its rejection. There is conflict of testimony as to the cost for making various repairs to which plaintiff claims he is entitled under the lease, but the record does not show that the witnesses on which he relies for the figure claimed took into consideration the deductions for normal depreciation contemplated by the lease. The commissioner saw the witnesses at the trial, and his finding is supported by the record. We adopt that finding as correct. Williams v. United States, 77 F.Supp. 207, 111 Ct.Cl. 356.

 We turn now to the question of the applicability of the antiassignment statute. This statute[2] is broad in

---

2. The statute provides:
"All transfers and assignments made of any claim upon the United States, or of

any part or share thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration

its prohibition of the transfer of claims, but judicial decisions have recognized certain exceptions to its application and enunciated the controlling reasons for its enactment. Among these exceptions are assignments by operation of law, United States v. Aetna Casualty & Surety Co., 338 U.S. 366, 70 S.Ct. 207, 94 L.Ed. 171; Colton v. United States, 71 Ct.Cl. 138; transfers by will, Erwin v. United States, 97 U.S. 392, 24 L.Ed. 1065; and general assignments for the benefit of creditors, Goodman v. Niblack, 102 U.S. 556, 26 L.Ed. 229. The primary reasons given for the statute's enactment are to prevent trafficking in claims against the Government, resulting in the exertion of improper influence in the departments, the courts, or the Congress; to relieve the Government from having to deal with a multiplicity of parties; and to prevent the introduction of a party who was a stranger to the original transaction. Seaboard Air Line Ry. v. United States, 256 U.S. 655, 41 S.Ct. 611, 65 L.Ed. 1149.

■ We do not agree with the defendant's contention that the statute is applicable. It should be noted at the outset that Mrs. Bickham did not purport to assign a *claim* as such. Only if the transfer of the lease was tantamount to the assignment of a claim was the statute violated. While it is true that all alleged injury to the property occurred prior to plaintiff's purchase of it from Mrs. Bickham, under our construction of the lease agreement defendant's dereliction of duty as to the condition of the premises did not become apparent and complete until the termination of the lease. Consequently, the claim accrued to plaintiff directly and not by way of assignment. Manifestly the antiassignment statute has no application under such circumstances. Viewing the lcase in its entirety the conclusion that a cause of action ripened only at the termination of the leasing period is sup-

ported by both the language of the instrument and the practical construction thereof by the parties themselves.

It is clear from the entire scheme of this leasing arrangement that the prospect of acquiring the improvements placed on the property by the Government was an important incentive to property owners to participate in the Homes Conversion Program. That the defendant's duty to take care extended to these additions as well as the original structure would seem beyond doubt. Paragraph 4 of the lease provides that these improvements, remodelings, fixtures, etc., added by the Government shall become the property of the lessor only *at the termination of the lease*. Defendant's obligation was to have the property in the state of repair required by the lease at the time the premises were surrendered. While the permission granted defendant in paragraph 9 to repair without the consent of the lessor indicates that some repair was contemplated at the convenience of the lessee, it is evident that an accounting under the lease was to come only on its termination. The record reflects that the parties so construed it, and such practical construction prior to litigation is important in arriving at the meaning of the instrument. In re Diversey Bldg. Corp., 7 Cir., 90 F.2d 703; Waukegan Times Theatre Corp. v. Conrad, 324 Ill.App. 622, 59 N.E.2d 308; J. E. Blank, Inc., v. Lennox Land Co., 351 Mo. 932, 174 S.W.2d 862. There is convincing evidence that both the plaintiff and his grantor assumed that it was only necessary for defendant to make the required repairs before surrendering the premises. It was as the end of the term approached that defendant's agents had the premises inspected and in answer to an inquiry wrote to plaintiff on January 2, 1951, as follows:

"Inspections were made [of the premises], and corrections for which the Gov-

---

therefor, and all powers of attorney, orders, or other authorities for receiving payment of any such claim, or of any

part or share, thereof, shall be absolutely null and void, * * *." 10 Stat. 170, as amended, 31 U.S.C.A. § 203.

ernment is obligated under the terms of its lease authorized and ordered to be completed *before the expiration date*." [Italics supplied.]

Under these circumstances we conclude that defendant's obligation to make the repairs required by the lease was not finally violated until after the transfer of the lease. The right of action therefore accrued directly to plaintiff. Judkins v. Charette, supra; Hill v. Hayes, 199 Mass. 411, 85 N.E. 434, 18 L.R.A., N.S., 375; Cawley v. Jean, 218 Mass. 263, 105 N.E. 1007.

While it is not the controlling element in this decision, we deem it not improper to point out that plaintiff's grantor (Mrs. Bickham) voluntarily intervened in this suit, adopting most of plaintiff's petition and evidence, and asking that she be allowed to recover *only* in the event that plaintiff is held to be precluded. We are convinced that the assignment of a claim against the United States was neither intended nor accomplished.

Plaintiff is entitled to recover $870, and the petition of the third party plaintiff is dismissed.

It is so ordered.

MADDEN, WHITAKER, and LITTLETON, Judges, concur.