**Vincent DESCIOSE, Jr. d/b/a Aero Realty Company, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 94–526 C.**

United States Court of Federal Claims.

Dec. 21, 1995.

Edward A. McConwell, Overland Park, Kansas, for plaintiff.

Nuriye C. Uygur, United States Department of Justice, Washington, D.C., for defendant.

**OPINION**

HODGES, Judge.

**I.**

Plaintiff leased office space to the Federal Aviation Administration (FAA) under three separate lease agreements. The first lease expired in 1980. The second agreement extended the lease through 1985. A bilateral modification of the second lease in 1984 required plaintiff to make certain improvements and alterations for $84,514. The modification also deleted a restoration clause that required the government to restore the premises upon vacating.

A May 1985 agreement extended the lease for a term of 14 years. Paragraph four of the third lease provided that the government could terminate at any time with 180 days notice in writing. The lease automatically renewed from year to year unless the government gave 90 days notice that it would not renew.

**II.**

Plaintiff contends that the modification does not reflect the parties' full agreement because defendant assented to a 14–year lease that could be canceled only upon a lack of appropriations or a material change of circumstance. According to plaintiff, the ter-

mination provision and the automatic renewal provision create an ambiguity that permits us to consider parol evidence, and parol evidence would show that the parties intended to waive the restoration provision in favor of a long-term lease.

The FAA gave plaintiff notice of termination in October 1992. Although plaintiff had more than 180 days notice, he argues wrongful termination because no loss of appropriations or material change of government circumstances occurred. Plaintiff also seeks restoration costs.

Plaintiff claims that defendant damaged the leased premises by installing tacks, nails, screws, and brads on linen-covered wall panels and hardwood doors in violation of plaintiff's instructions and lease obligations. The contracting officer testified that any damage to the premises did not exceed ordinary wear and tear. Plaintiff also seeks rental adjustments for the rental periods from 1985 to 1990 and from 1990 to 1993.

We ruled for the government on the issues of wrongful termination and restoration costs at trial. The termination and automatic renewal provisions did not create an ambiguity, and plaintiff's evidence of wrongful termination would contradict the plain language of the contract. If plaintiff had evidence of a collateral agreement to waive the restoration provision in exchange for a 14-year lease, its admission would violate the parol evidence rule.

The remaining issues are whether plaintiff is entitled to compensation for damage to the premises, and whether defendant should reimburse plaintiff for rental rate assessments by the City of Long Beach. We rule for plaintiff on the issue of rental rate adjustments.

## Discussion

### I.

The 1964 lease provided that the government could alter the premises, but plaintiff could require restoration "to the same condition as that existing at the time of entering . . . reasonable and ordinary wear and tear . . . excepted." The 1980 lease allowed the government to make alterations, and either restore the premises or make a cash settlement. This provision was deleted pursuant to a modification whereby plaintiff replaced office partitions and installed electrical lines and outlets. Defendant reimbursed plaintiff for these renovations.

The 1985 lease noted that the restoration clause had been deleted by the 1984 modification. The 1985 lease does not specify the condition in which the premises should be returned. Although the government did not consider itself to be responsible for restoration, the contracting officer considered claims for items beyond normal wear and tear. Defendant admits liability for damages beyond normal wear and tear, but argues that the condition in which the premises were left represents normal wear and tear. Plaintiff concedes responsibility for normal wear and tear, but argues that the premises were severely damaged. The issue is whether the condition in which the premises were left constitutes normal wear and tear.

Plaintiff testified to discussions with FAA representatives concerning permissible wall hangings and the use of tacks. He wanted the tenants to use very small tacks and to put as few items as possible on the linen-covered walls. One manager allowed employees to hang toy airplanes, blimps, personal photos, and calendars with nails and screws in a variety of sizes, according to plaintiff.

The contracting officer testified that ordinary wear and tear results from "normal usage." Large holes and ripped carpet would be damage beyond ordinary wear and tear. Defendant presented a video tape of the leased premises at trial and argued that it showed normal wear and tear. The video revealed nail holes in the walls, discoloration of the wall fabric from pictures and furniture, gouges in the fabric, and carpet stains from water seepage.

█ If a tenant does not promise to return premises in a certain condition, it is liable for substantial repairs but not for those necessitated by ordinary wear and tear. *See City of New York v. United States*, 119 Ct.Cl. 769, 793, 97 F.Supp. 808, 818 (1951). Provisions excepting normal wear and tear reflect basic obligations between lessor and lessee, and

they normally are included in rental contracts. *Id.*, 97 F.Supp. at 819. "[L]eases, like other contracts, are to receive a reasonable interpretation that will effectuate the intention of the parties." *Singer v. United States*, 126 Ct.Cl. 417, 421, 115 F.Supp. 166, 168 (1953) (citation omitted).

■ The parties excepted normal wear and tear in the 1964 lease. The clause was omitted from the 1980 and 1985 leases, perhaps inadvertently. A reasonable interpretation of the lease and the intent of the parties would assume a provision excepting ordinary wear and tear.

The video tape of the premises did not show damage beyond ordinary wear and tear. Plaintiff must have anticipated that a tenant occupying this building for nearly 30 years would leave nail holes and minor carpet and wall damage. Plaintiff cannot recover for this ordinary wear and tear.

## II.

■ Plaintiff contends that he is entitled to ground rental adjustments for the periods from 1985 to 1990 and from 1990 to 1993. The lease provides that the annual base rental rate would be modified in May 1985 and on May 1 every five-year period thereafter, to reflect land lease adjustments that the City of Long Beach assessed against plaintiff. The adjustment option required plaintiff to submit written notice to the government with documented copies of any rental increase notice. The government could refuse to adjust the rental rate if plaintiff did not submit the necessary information in a timely manner. According to defendant, plaintiff's request for rental adjustment was not timely.

The 1964 and 1980 leases did not provide for rental rate adjustments. The first escalation clause was in the 1985 lease. To implement the escalation clause and ascertain a ground rental rate, plaintiff was required to document the city's rental increase for 1980–1985. The amount of rent plaintiff paid the

city for 1980–1985 was to be the base ground rental rate for the 1985 lease with the FAA. The land rental rate adjustment for 1980–1985 was assessed in 1980, but plaintiff disputed the increase and did not settle with the city until 1986. Plaintiff submitted a claim to the FAA in 1987 for rental adjustment based on the 1980–1985 term.

The contracting officer testified that defendant paid increased rent after notice in 1987 to compensate plaintiff for the increased rental rates, but did not make the increase retroactive. The contracting officer believed that she had discretion to increase rent retroactively for a few months but not years. She testified that plaintiff did not object to defendant's refusal to apply the rental adjustment retroactively. Plaintiff testified that he was paid retroactively in 1987 for two years, from 1985 to 1987. When the parties signed the 1985 lease, plaintiff advised the FAA that the land rental rate for 1985 to 1990 was also in dispute.

After defendant vacated the premises in 1993, plaintiff submitted the rental increase documentation for 1985–1990 and 1990–1993. The rental rate for those periods had been assessed in 1985 and 1990 respectively. Plaintiff gave defendant the choice of paying the assessed amount upon vacating and receiving a rebate later, or waiting until the determination was final. The contracting officer believed that the lease did not allow her to grant plaintiff's claim for a retroactive rental increase. She stated that had plaintiff submitted the documentation in 1990, she would have granted the claim even though the assessment was under protest. Plaintiff testified that this submission was no less timely than prior submissions and that waiting until the rental increase was settled before billing the government seemed prudent.

The language of the clause at issue is ambiguous because it does not address the possibility of a protest.[1] Defendant interpreted the provision to mean that once plain-

---

1. The clause reads in part:

    [C]ommencing May 1, 1985 and on May 1 every 5 year period thereafter, the bare rental rate charged to the Government may be adjusted by the same percentage as any land lease adjustment assessed against lessor by the City of Long Beach; ... [the adjustment] may be exercised only upon the submission of a written notice to the Government. Said notice shall include documented copies of any rental increase notice issued by the City of Long Beach.

tiff received an assessment, he was to notify the FAA. Plaintiff knew that he had to submit "documented copies of any rental increase notice" to defendant, but he believed that "documented copies" of notice could not exist until the amount of the increase was determined. He argues that passing the assessed increase on to defendant would be unfair until plaintiff knew the exact amount of his rental increase. Defendant concedes that plaintiff would be entitled to a rental increase from the time he submitted documented notice, but contends that he is not entitled to retroactive payment.

The contracting officer suggested at trial that if plaintiff had passed on the increase to defendant when it was assessed, and arbitration later resulted in lower rent, the government would not be entitled to a refund. Presumably, she thought the increased rent would be a windfall to the contractor. This would be an unlikely result.

As it happened, plaintiff's appeal for the period from 1980 to 1985 resulted in a lower increase than the city had proposed. Plaintiff retroactively paid the smaller increase for 1980–1985. As plaintiff did not pay the higher increase during arbitration, it was reasonable that he not charge these amounts to the government then.

Plaintiff was not paid retroactively from 1980 when the ground rental increase for 1980–1985 was settled, so he should not expect to be paid retroactively for 1985–1993, according to defendant. However, the ground rental adjustment clause did not appear in the lease until 1985. The issue is whether the rental increase should have been applied retroactively. The lease is silent on this point, but plaintiff's decision to wait until the increase was certain before charging it to defendant seems reasonable.

Because defendant vacated the premises in 1993, it was reasonable for plaintiff to give defendant the option of paying the increase and perhaps later receiving a rebate, or waiting until the determination was final. Defendant must reimburse plaintiff for the rental increase.

## Conclusion

For the reasons stated above and in the record of trial, plaintiff's claims for restoration costs and for wrongful termination are dismissed. Plaintiff's $6100 claim for the repair of ordinary wear and tear is denied. Plaintiff's $29,000 claim for assessed rental increase is granted. The clerk will enter judgment for plaintiff in the amount of $29,000. No costs.