CITY OF BLOOMINGTON, Appellant,

v.

Richard KURUZOVICH, Appellee.

No. 4–985 A 262.

Court of Appeals of Indiana,
Fourth District.

Dec. 28, 1987.

David L. Ferguson, Ferguson Ferguson & Lloyd, Bloomington, for appellant.

W. Brent Gill, Law Offices of Roger L. Pardieck, Seymour, for appellee.

MILLER, Presiding Judge.

Richard Kuruzovich filed this personal injury action against the City of Bloomington alleging Bloomington negligently designed and maintained the softball field where he was injured. The case was venued to the Brown Circuit Court, where it was tried to a jury. The jury returned a verdict in favor of Kuruzovich in the amount of $82,000.00, and the court entered judgment on the verdict. Bloomington appeals, and we affirm.[1]

## FACTS

On May 4, 1982, Richard Kuruzovich, by vocation a hod carrier and by avocation an avid amateur athlete, went to the Sherwood Oaks Park to practice with his softball team. When he arrived another team was using the softball field, so Kuruzovich and his teammate Kevin Coates warmed up by playing catch outside the first base line. Coates threw the ball high over Kuruzovich's head so Kuruzovich could practice chasing down fly balls. Kuruzovich ran after the ball; when he was almost under it he turned to backpedal the last few steps. As he backpedalled he tripped over a manhole cover which stood approximately nineteen feet from the ball field, and which was approximately nine inches above ground level. Kuruzovich fell flat on his back. He was able to continue practice for awhile, but was forced to quit when his back began to tighten.

When his back problems did not subside, Kuruzovich consulted with a chiropractor and an orthopedic surgeon. Their examinations revealed he suffered from a spondylitis—a cracked vertebra—and a grade one spondylolisthesis—a slipped disk—as well as some soft tissue damage. Although treatment improved Kuruzovich's condition to some extent, he was unable to continue working as a hod carrier and was forced to accept employment at substantially lower wages.

Sherwood Oaks Park was originally developed by Korn Parchies, Inc. as part of the Sherwood Oaks subdivision of Bloomington. At the time of Kuruzovich's accident Korn Parchies, Inc. was defunct; it had been involuntarily dissolved by the state because it had not engaged in business activities for a substantial period. Eugene Rubeck and Bill Brown, the owners of Korn Parchies, apparently retained title to the park after Korn Parchies dissolved, but they intended to donate the park to Bloomington when it would be advantageous for them to do so for tax purposes.

Bloomington did not own the park, but it did enter a written lease in the park which ran from January 1, 1976 through December 31, 1981. During this lease, Bloomington mowed the park, removed the trash, and generally maintained the park. Bloomington continued to maintain the park after the expiration of the lease.

The manhole which caused the accident was part of a sewer system originally built by Korn Parchies as part of the Sherwood Oaks subdivision. The sewer was dedicated to Bloomington long before the accident. There is evidence the ball diamond was installed by Bloomington during the period of the written lease.

## ISSUES

 Bloomington raises multiple issues for our review, which we restate as follows:

1. Did Bloomington retain any interest in Sherwood Oaks Park, or did Bloomington retain any control over Sherwood Oaks Park, sufficient to render Bloomington liable for Kuruzovich's injuries sustained in the park?

2. Was Kuruzovich an invitee, or mere licensee, when he entered the park?

---

**1.** Our review of this matter has been severely hampered by Bloomington's failure to supply us with a reasonably complete record. We find it especially troublesome that Bloomington asks this court to reverse because of insufficient evidence when Bloomington has only presented this court with the evidence favorable to its case. In many cases it is not necessary or desirable for the entire record to be reproduced on appeal. In this case, failure to reproduce a reasonably complete record has threatened to present this court with a view of the facts which was neither fair nor complete. Counsel would be well advised in the future to present this court with all parts of the record necessary for a proper review of alleged errors.

3. Is Bloomington immune from liability under either the Tort Claims Act, IND. CODE 34–4–16.5 or the Recreational Use Statute, I.C. 14–2–6–3?

4. Did the trial court err in refusing to give certain jury instructions tendered by Bloomington?

5. Did the trial court err in finding sufficient evidence to send the case to the jury? [2]

### DECISION

ISSUE 1: *Control of the Park as a Basis for Liability*

We first turn to the question of whether Bloomington retained control over Sherwood Oaks Park as a tenant or in some other manner. In premises liability cases, we must determine who controlled the property upon which the injury occurred, because "[t]he thread through the law imposing liability upon occupancy of premises is control." *Great Atlantic & Pacific Tea Co. v. Wilson* (1980), Ind.App., 408 N.E.2d 144, 150. The reasons the law imposes liability on the person who controls the property is self-evident: only the party who controls the land can remedy the hazardous conditions which exist upon it and only the party who controls the land has the right to prevent others from coming onto it. Thus, the party in control of the land has the exclusive ability to prevent injury from occurring.

 Bloomington argues it did not control the premises because it did not own the park and because the written lease had expired. Kuruzovich argues Bloomington was a holdover tenant and retained control

over the park because a tenancy at will resulted, or, alternatively, regardless of whether Bloomington had a leasehold in the premises, that it exercised *de facto* control over the park. We agree with Kuruzovich that Bloomington remained a tenant at will after the expiration of the written lease and, consequently, that Bloomington controlled the park at the time of Kuruzovich's injury.

 Generally, when a tenant holds over past the term of his lease, the lease is renewed. *Speiser v. Addis* (1980), Ind. App., 411 N.E.2d 439. The renewed lease contains the same terms, and is subject to the same conditions, as the original lease. *Myers v. Maris* (1975), 164 Ind.App. 34, 326 N.E.2d 577. When the original lease was for more than one year, the renewal lease is from year to year. *Speiser, supra; Burdick Tire & Rubber Co. v. Heylmann* (1923), 79 Ind.App. 505, 138 N.E. 777.

Here, Bloomington entered into a written lease which expired December 31, 1981. While the lease was in effect, Bloomington listed Sherwood Oaks Park as a Bloomington city park, mowed the park, and removed the trash from the park. The evidence indicates Bloomington continued to mow and remove the trash after the written lease expired. Bloomington continued to claim the park as a Bloomington park after the written lease had expired. These actions were sufficient to establish Bloomington held over after the termination of the written the lease. Because Bloomington held over, the written lease is deemed to have renewed for the year. Thus, Bloomington controlled the park and is liable for Kuruzovich's injuries.[3]

---

**2.** Bloomington also argues the trial court erred in refusing to allow testimony that there had been no accidents involving the manhole cover. Bloomington did not challenge this evidentiary ruling in its motion to correct errors. *See* Record, p. 1–2. Ind.Rules of Procedure, Trial Rule 59, requires the party to set forth all claimed errors in the motion. We will read the motion and its supporting memoranda together to determine if the appellant has raised the issue. *Hendrickson & Sons Motor Co. v. Osha* (1975), 165 Ind.App. 185, 331 N.E.2d 743. However, evidentiary challenges should be made with specificity in order to preserve them. *Ohio Valley Gas, Inc. v. Blackburn* (1983), Ind.App.,

445 N.E.2d 1378. Here, Bloomington does not raise the court's ruling in the motion, and only mentions the ruling in the supporting memoranda with reference to the issue of whether Bloomington had notice of the dangerous condition. Bloomington never argued the trial court erred in excluding the evidence and, therefore, has waived the issue.

**3.** We note some courts have found sufficient control to support liability in instances where the defendant did not have any interest in the land. *See Watford v. Evening Star Newspaper Co.* (D.C.Cir.1954), 211 F.2d 31; *Hotels El Rancho v. Pray* (1947), 64 Nev. 591, 187 P.2d 568.

Bloomington argues there could have been no extension of the lease, even one arising out of its own actions in holding over, because it was prevented from assenting to a lease extension without the approval of the Bloomington Parks Board. In making this argument, Bloomington relies on I.C. 36–10–4–20, which reads, in relevant part:

"(a) Real and personal property may be granted, devised, leased, bequeathed, or conveyed to a city for park purposes ...
(b) The city may take and hold the property in trust or upon conditions that are approved by the [park] board. The property and the rents, issues, and profits from it are subject to the exclusive control of the board."

We find this statute did not prevent Bloomington from renewing the lease by holding over. The statute does not state that the Parks Board approval is a precondition to a city taking or renewing any interest in land. Rather, the statute states that if a city seeks to take an interest in land, the Parks Board is charged with the duty to establish the conditions under which the city will take the interest. In this case, when the Bloomington Parks Board negotiated and approved the written lease, it determined the conditions under which Bloomington should take an interest in Sherwood Oaks Park. In holding over, Bloomington merely chose to continue under the conditions originally set by its Parks Board.

Even if we were to find the statute required Parks Board approval for Bloomington to renew the lease by holding over, we would not reverse here. Bloomington cites *Rieth–Riley Construction Co. v. Town of Indian Village* (1966), 138 Ind. App. 341, 214 N.E.2d 208, for the proposition that, in order to shield its municipal corporations from liability, Indiana requires them to follow certain formalities when they contract. However, Kuruzovich rightly notes the *Rieth–Riley* court refused

to absolve Indian Village of liability in that case because the town received the benefits of the contract but sought to use a formality to avoid its obligations under the contract. Here, Bloomington actually controlled the premises and received the benefits of operating Sherwood Oaks Park, but now seeks to avoid the liabilities of controlling and of operating the park. We do not believe either the case law or the public policy of this State would countenance such an inequitable result.

## ISSUE 2: *Kuruzovich's Status: Invitee or Licensee?*

Bloomington notes that Indiana still adheres to the common law categories of invitee, licensee, and trespasser for determining the extent of the defendant's liability in premises liability cases. *Joseph v. Calvary Baptist Church* (1986), Ind.App., 500 N.E.2d 250; *Barbre v. Indianapolis Water Co.* (1980), Ind.App., 400 N.E.2d 1142. If Kuruzovich was an invitee when he entered Sherwood Oaks Park, Bloomington owed him a duty of reasonable care under all the circumstances, and he merely would have to prove Bloomington was negligent in order to recover. *Joseph, supra; Barbre, supra.* If, however, Kuruzovich was a licensee, Bloomington only owed him a duty to refrain from willfully and wantonly injuring him, and he could not recover by proving mere negligence. *Gaboury v. Ireland Road Grace Bretheren* (1983), Ind., 446 N.E.2d 1310; *Joseph, supra; Barbre, supra.*

Bloomington cites *Joseph* and *Mullins v. Easton* (1978), 176 Ind.App. 590, 376 N.E.2d 1178 for the proposition that, in order for Kuruzovich to have been an invitee, he had to have entered Sherwood Oaks Park for purposes related to Bloomington's economic benefit. When we decided *Joseph*, we were solely concerned with the question of whether one who is injured while providing an economic benefit to his

In both these cases, the defendants invited members of the public onto the land of another. In these cases the defendants exposed the public to hazards existing on the land, and the courts merely assigned liability to the parties who cre-

ated the risks. Here, Bloomington created the risk of injury to Kuruzovich by inviting him onto the park premises while a hazardous condition existed there.

church could recover under traditional premises liability law. We did not consider whether one could *ever* be an invitee absent an economic benefit to the defendant. Shortly after we decided *Joseph,* however, the Third District was presented with precisely this issue in *Fleischer v. Hebrew Orthodox Congregation* (1987), Ind.App. 504 N.E.2d 320. In *Fleischer,* the plaintiff, Babette Fleischer, was injured while at temple celebrating the feast of Purim. Another member of the congregation tripped on a plastic runner and fell into Babette, fracturing her leg. The trial court granted summary judgment, finding Babette a mere licensee. Babette appealed, asserting she was a "public invitee" under the test set forth in the *Restatement (Second) of Torts* § 332 (1965), which reads in relevant part:

"(1) An invitee is either a public invitee or a business visitor.

(2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public."

Judge Staton, writing for the court, noted early Indiana cases did not necessarily require economic benefit where the defendant held the land open to the public generally, or, at the very least, to some broad segment of the public. *Fleischer, supra* (citing *New York, Chicago, & St. Louis R.R. Co. v. Mushrush* (1894), 11 Ind.App. 192, 37 N.E. 954; *Howe v. Ohmart* (1893), 17 Ind.App. 32, 33 N.E. 466; and *Davis v. Central Congregational Society* (1880), 129 Mass. 367, 37 Am.Rep. 368). Judge Staton wrote:

"Given the public interest involved and our recognition of the implication of safety which arises when the public is encouraged to enter premises for a particular purpose, we conclude that the public invitee test is a proper guide for determining invitee status. The fact an owner

or occupier has a precuniary interest in the use of his premises is not the only appropriate justification for imposing upon him a duty of reasonable care...." *Fleischer, supra,* 504 N.E.2d at 323–324.

We are convinced the public invitee rule is a salutory development in the law of this state, and we join the Third District in declaring that, when one invites the public, or a large segment thereof, onto property for a particular purpose, he is liable to those he invites onto the land for any hazardous conditions he causes or negligently allows to remain on the land. Here, Bloomington maintained Sherwood Oaks Park as a city park open to the general public. In doing so, Bloomington incurred a duty to design the park safely and keep it free from hazards. The evidence supported the conclusion that Bloomington failed in that duty, and Kuruzovich was harmed by its failure. We find Bloomington liable for that harm.[4]

## ISSUE 3: *Immunity Under the Recreational User or Tort Claims Statutes*

Bloomington claims immunity from liability under both the Recreational User Statute, I.C. 14–2–6–3, and the Tort Claims Act, I.C. 34–4–16.5. We are unable to find a basis for these claims under either statute.

### A. *Recreational User Statute, I.C. 14–2–6–3*

The Recreational User Statute provides:

"Any person who goes upon or through the premises including, but not as a limitation, lands, caves, waters, and private ways of another with or without permission to hunt, fish, swim, trap, camp, hike, sight see, or for any other purposes, without the payment of monetary consideration, or with the payment of monetary consideration directly or indirectly on his behalf by an agency of the state or federal government, is not thereby entitled

---

**4.** Bloomington, at oral argument, argued that we hold cities liable for failure to maintain safe parks only where children are injured. We see no good reason to require cities to maintain parks safe for children but not for adults. Indeed, given the fact children are less able to

appreciate the nature of hazardous conditions than are adults, it makes absolutely no sense to adopt such a standard, since any park safe for children would be safe for adults. In any event, the public invitee standard has been adopted for all persons, not just children.

to an assurance that the premises are safe for such purposes. The owner of such premises does not assume responsibility for nor incur liability for any injury to person or property caused by an act or failure to act of other persons using such premises." I.C. 14–2–6–3.

Bloomington argues this section exempts all landowners, including governmental units, from liability. Kuruzovich argues governmental units do not fall within the scope of this statute. We find we must agree with Kuruzovich.

In *Clem v. United States* (N.D.Ind.1985), 601 F.Supp. 835, the plaintiff's decedent drowned after being drawn into a dangerous undertow in Lake Michigan off the Indiana Dunes National Lakeshore. The plaintiff sued the federal government for negligence in failing to warn of the undertow. The district court, finding the government immune under I.C. 14–2–6–3, granted the government's motion for dismissal. The court reached this conclusion only after considering the specific relationship between I.C. 14–2–6–3 and the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.* Under the Federal Tort Claims Act, the federal government has consented to waive its sovereign immunity and render itself amenable to suit, *but only to the extent that a private citizen would be amenable to suit.* The *Clem* court merely decided that, since a private citizen would be shielded by the Recreational User Statute, and since the federal government has only waived its sovereign immunity to the extent that it would incur the same liabilities as private citizens, the federal government was shielded by the act.

We find a different situation exists when a state government unit seeks to avail itself of the protections of the Recreational User Statute. In Indiana, sovereign immunity was abrogated by a decision of the supreme court. *Campbell v. State* (1972), 259 Ind. 55, 284 N.E.2d 733. When the supreme court abrogated the doctrine, it rendered the state amenable to suit generally. In Indiana, we have no statute which renders the state liable only on the condition that the state's liability be equivalent to the liability of private citizens. In *Clem,*

the court's decision hinged on the requirement of the Federal Tort Claims Act that the federal government is treated like a private citizen. We have no such requirement here. Indiana law has traditionally recognized that the state and its units are liable for failure to maintain reasonably safe parks. *See, e.g. McKenna v. City of Fort Wayne* (1981), Ind.App., 429 N.E.2d 662; *Mills v. American Playground Device Co.* (1980), Ind.App., 405 N.E.2d 621. In the absence of clear legislative statement that the Recreational User Statute applies to the State and its units, we will not use the statute to upset years of settled law. We therefore hold the Recreational User Statute does not apply to the state or its units.

### B. *Tort Claims Act, I.C. 34–4–16.5–3*

Bloomington claims immunity under three separate subsections of the Tort Claims Act. The first of these, subsection (6), provides immunity from liability where an officer of the state or one of its units causes a loss in "the performance of a discretionary function...." The second, subsection (9), provides immunity where a loss results from "the act or omission of someone other than the governmental entity employee...." Finally, subsection (11), provides immunity where the loss is due to a "failure to make an inspection, or making an inadequate inspection of any property, other than the property of a governmental entity, to determine whether the property complied with or violates any law or contains a hazard to health or safety."

We find none of these sections govern this case. Bloomington argues its only connections with the park were mowing and trash pick up, and that the decisions to mow the park and pick up the trash were discretionary. This argument displays a fundamental misconception about Kuruzovich's theory of liability and the case law governing the discretionary function test for immunity. Kuruzovich did not claim his injuries stemmed from a negligent failure to mow the grass or pick up the trash. Rather, he claimed his inju-

ries resulted from Bloomington's negligent design and maintenance of the Sherwood Oaks ballfield. Kuruzovich introduced evidence of mowing and trash collection *only* to prove Bloomington maintained an interest in the park premises.

When we examine the issue from the proper perspective, we need to determine whether Bloomington's design and maintenance of the ballfield were ministerial or discretionary acts. We conclude they were ministerial. In *Mills v. American Playground Device Co.* (1980), Ind.App., 405 N.E.2d 621, the plaintiff was injured when he fell from a slide installed in a Gas City city park. Gas City argued it was immune from liability because it was performing a discretionary function when it provided the park. Judge Shields, writing for the Second District, disagreed, noting, "Once [Gas City] opted to provide a playground and to equip it, a ministerial duty arose to provide reasonably safe premises." *Id.* at 626.[5] Here, the decision to put a ballfield into Sherwood Oaks Park was discretionary, but subsequent design and maintenance decisions were ministerial. Consequently, Bloomington is not immune from liability for negligence in design or maintenance of the ballfield.

 Bloomington's assertion that it is immune from liability because Kuruzovich's injuries resulted from Kevin Coates's act of throwing the softball merit but short discussion. In order for I.C. 34–4–16.5–3(9) to shield Bloomington from liability, Coates's act of throwing the ball would have to be the proximate cause of Kuruzovich's injuries. *Maroon v. Department of Mental Health* (1980), Ind.App., 411 N.E.2d 404. Coates's actions simply were not such proximate cause. Of course, a pre-existing passive condition can be the cause of an accident if it played a material part in bringing the accident about. *State v. Edgman* (1983), Ind.App., 447 N.E.2d 1091. The cause-in-fact of an accident may also be the proximate cause of the accident. *Id.*

But, ultimately, the question of whether the pre-existing condition was the proximate cause of the accident rests on the determination of whether the accident was a reasonably foreseeable consequence of the pre-existing condition. *State v. Thompson* (1979), 179 Ind.App. 227, 385 N.E.2d 198. If we can find the evidence supports the conclusion that the original wrong was one of the proximate causes of the accident, rather than one of the remote causes, we must affirm. *Meadowlark Farms, Inc. v. Warken* (1978), 176 Ind. App. 437, 376 N.E.2d 122. Thus, if the accident is "a natural, probable and foreseeable consequence of the first negligent act or omission, the original wrongdoer may be held liable even though other independent agencies intervene between his negligence and the ultimate result." *Havert v. Caldwell* (1983), Ind., 452 N.E.2d 154, 159.

Here, Bloomington's design and maintenance failure resulted in a softball field being placed too near an obscured, raised manhole cover. The relationship between the field and the cover raised the reasonably foreseeable possibility—perhaps even probability—that someone would trip, fall, and be injured. When Kevin Coates threw the ball he may have given rise to a condition which allowed the accident to occur, but he did not proximately cause the accident. Bloomington, then, cannot avail itself of immunity under I.C. 34–4–16.5–3(9).

 Bloomington also claims immunity under I.C. 34–4–16.5–3(11), which provides immunity for failure to inspect property other than the property of a governmental unit. This argument fails for two reasons. Kuruzovich did not seek to recover for failure to inspect; rather, he claimed Bloomington was liable for negligently designing and maintaining the park. This section is inapplicable on its own terms. Furthermore, we have held Bloomington retained a leasehold in the property, so the park was not property of one other than a

---

**5.** *See State v. Magnuson* (1986), Ind.App., 488 N.E.2d 743, 747, where Judge Robertson, commenting upon *Mills*, stated, "In *Mills, supra,* it was held, in substance, that the decision to build a playground was discretionary and the installation and maintenance of the playground equipment was ministerial."

governmental unit. Again, the statute is inapplicable on its own terms; Bloomington has no basis for any claim of statutory immunity.

### ISSUE IV: *Jury Instructions*

Bloomington asserts the trial court erred in refusing to give several of its tendered jury instructions. We do not agree.

■ Usually, it is error for a trial court to refuse to give an instruction if the substance of the instruction is correct, if it is supported by the evidence, if it does not repeat material adequately covered in other instructions, and if the substantial rights of the tendering parties would be prejudiced by failure to give the instruction. *Captain & Co. v. Stenberg* (1987), Ind.App., 505 N.E.2d 88; *Board of County Commissioners of the County of St. Joseph v. Arick* (1985), Ind.App., 477 N.E.2d 112. Obviously, the court cannot give instructions which do not correctly state the law. Furthermore, the court is not required to give an instruction which covers matter already covered in other instructions. *Thornton v. Pender* (1978), 268 Ind. 540, 377 N.E.2d 613; *Captain & Co., supra.*

■ Bloomington challenges the trial court's refusal to give its tendered instruction number 2. This instruction was a restatement of the terms of the Recreational User Statute. We have held that the Recreational User Statute does not apply to governmental units of the state. The trial court did not err in refusing to give the instruction because the facts of this case do not support the instruction.

Bloomington next challenges the court's refusal to give its tendered instruction number three, which restated sections of the Tort Claims Act. Again, we have held the Tort Claims Act inapplicable to this case. The trial court, then, was not required to give the instruction and, indeed, would have erred had it given the instruction.

■ Bloomington's tendered instruction number five reads:

"A person is required to reasonably exercise his faculties to discover and avoid dangerous defects and obstructions.
"A person has the duty to exercise requisite care to discover and avoid defects or obstructions which are visible and obvious, and the failure to exercise that care is negligence."

If Bloomington intended this instruction as an instruction on the defense of open and obvious defect, the trial court certainly did not err in refusing to give it, since open and obvious defect is a defense to products liability actions and not to negligence actions. *Bridgewater v. Economy Engineering Co.* (1985), Ind., 486 N.E.2d 484. If it was intended as a contributory negligence instruction, the trial court still did not err in refusing it, since the trial court instructed the jury on contributory negligence. Bloomington was not entitled to an instruction on an issue which the trial court had already given an adequate instruction. *Captain & Co., supra.*

Bloomington next challenges the court's refusal to give its tendered instruction number 8, which dealt with the burden of proof and preponderance of evidence. Bloomington concedes the trial court covered the preponderance of the evidence in another final instruction, but claims the court failed to give the burden of proof instruction in the preliminary instructions as mandated by Ind.Rules of Procedure, Trial Rule 51(A). The trial court stated on the record it had given a burden of proof instruction. Bloomington, as appellant, bore the obligation of demonstrating error occurred, *Cox v. State* (1985), Ind., 475 N.E.2d 664, yet Bloomington did not choose to supply this court with the record of the preliminary instructions. We will not presume the trial court failed to give an instruction which it said it had given and, consequently, we find no error here.

Bloomington submitted, and the trial court refused, its tendered instructions numbered 9 and 10, which read:

"[9] If you find that Richard Kuruzovich entered the property for his own convenience, curiosity, or entertainment, then you must find he is a licensee. If

Richard Kuruzovich is a licensee who entered the property for his own convenience, curiosity, or entertainment then under Indiana Law you must find that he entered the property at his own risk. It is presumed that an adult licensee will look after his own safety and welfare. Under the Indiana law a licensee enters the property at his own risk and enjoys the property along with the perils associated with it.

"[10] If you find that Richard Kuruzovich was an invitee then you must find that the City owed him a duty of reasonable care. Reasonable care is not described as absolute, but relative to the facts. If you find that Bloomington exercised the ordinary amount of care in maintenance of the property, then you must find Bloomington not liable. Indiana law requires that the owner only exercise an ordinary amount of care. If the city exercised a reasonable amount of care then Mr. Kuruzovich was negligent in not seeing that which he could have seen with ordinary and reasonable care.

"Under Indiana law it is negligence not to see that which could be seen by the exercise of ordinary and reasonable care."

Bloomington was not entitled to instruction number 9 because it did not recognize his status as a public invitee. Indiana cases have traditionally held municipal corporations to a standard of reasonable care under all the circumstances in the maintenance and design of parks. *See McKenna, supra; Mills, supra.* No Indiana case has ever applied the traditional economic benefit distinction between invitee and licensees to those injured in public parks. The trial court was correct not to do so here.

Furthermore, Bloomington was not entitled to have instruction 10 read. The trial court read Kuruzovich's tendered instruction 2, which stated:

"The City of Bloomington has a duty to exercise reasonable care in the design, construction, maintenance and repairs of its parks for the safety of persons rightfully frequenting the parks and equipment. In designing, constructing, maintaining and repairing parks, the City of Bloomington must exercise that care which would be exercised by an ordinary prudent person under the circumstances."

This instruction correctly stated the law applicable to those injured in public parks. *City of Terre Haute v. Webster* (1942), 112 Ind.App. 101, 40 N.E.2d 972. The standard of care instruction given in Bloomington's number 10 was substantially covered by Kuruzovich's number 2. To the extent Bloomington's number 10 was not so covered, it incorrectly stated the law with respect to public parks and, accordingly, the trial court committed no error in refusing to give it.[6]

ISSUE V: *Sufficient Evidence to Send this Case to the Jury*

Bloomington claims its motions for summary judgment and judgment on the evidence were improperly denied for a variety of reasons. We do not agree.

Bloomington first claims there was insufficient evidence that it owned or leased the property. Much of this opinion has been devoted to explaining why the evidence and law were sufficient to support the jury's determination that Bloomington leased the property. For the reasons stated previously we reject Bloomington's argument.

Bloomington next asserts Kuruzovich produced insufficient evidence that Bloomington breached its duty of care. The substance of Bloomington's argument is that the testimony of Kuruzovich's recreational sports expert, Dr. Neil Joseph Dougherty, that the manhole cover was placed too near the softball field, should be discounted be-

---

**6.** Bloomington claims the court erred in giving Kuruzovich's instruction number 2 because it took the question of whether Bloomington owned or leased Sherwood Oaks Park from the jury. This is obviously a specious argument. The instruction only stated that Bloomington owed a duty of reasonable care in the design and maintenance of its parks. The instruction is silent as to whether Sherwood Oaks was a Bloomington park. The jury was free to decide whether the park was or was not a Bloomington park. Obviously, they decided it was.

cause the Sherwood Oaks field was not an official field.

Dougherty testified that proper softball field design called for twenty-five feet of uninterrupted space outside the foul lines in order to prevent players from injury. He also testified the placement of the field near the cover created a hazard to those using the field. Bloomington asserts this testimony is insufficient because the field was not officially laid out according to softball specifications. There was, however, testimony about the placement of the backstops. There was also testimony about the location of the bases. Even if Dougherty's testimony does not establish a *per se* violation of softball safety rules, it was some evidence that the design and placement of the field (in this case the first base line) was dangerous. A trial court should not grant a motion for judgment on the evidence unless there is a total absence of evidence or reasonable inference on at least one essential element of the plaintiff's case. *Mamula v. Ford* (1971), 150 Ind. App. 179, 275 N.E.2d 849. Here, there was some evidence of Bloomington's duty, and the trial court committed no error in denying Bloomington's motion.

 Bloomington asks us to hold Kuruzovich contributorily negligent as a matter of law. We can make such a holding only where there is but one reasonable conclusion to be drawn from the evidence, and that conclusion is that the plaintiff was contributorily negligent. *Gasich v. Chesapeake & Ohio R.R.* (1983), Ind.App., 453 N.E.2d 371. If the facts support more than one reasonable inference, contributory negligence is an issue of fact for the jury to decide. *Jones v. Gleim* (1984), Ind., 468 N.E.2d 205. Bloomington bore the burden of proving Kuruzovich was aware of the hazards and acted negligently nonetheless. *Hundt v. Lacrosse Grain Co.* (1983), Ind., 446 N.E.2d 327. The burden of proving contributory negligence fell on Bloomington, the defendant. *Lambert v. Parrish* (1984), Ind.App., 467 N.E.2d 791, vacated on other grounds, *Lambert v. Parrish* (1986), Ind., 492 N.E.2d 289. Bloomington simply has not met its burden. It failed to order up those parts of the record containing evidence on how the field and manhole appeared at the time of the accident. Since Bloomington failed to provide this court with any evidence relevant to the conditions at the time of the accident, we cannot be so presumptuous as to hold, as a matter of law, that Kuruzovich was contributorily negligent for failure to use care around a known hazard.

Finally, Bloomington argues the evidence that Kuruzovich's injuries were caused by accident was insufficient. Bloomington's expert witness testified that it was highly improbable, but not impossible, for the fall to have caused Kuruzovich's injuries. Kuruzovich's chiropractor testified that, in his opinion, the fall caused the injuries. The jury, then, was given conflicting evidence and made its decision on that evidence. On appeal, we will not reweigh the evidence and disturb the jury's determination. *Litzelswope v. Mitchell* (1983), Ind.App., 451 N.E.2d 366. We find no error here.

## CONCLUSION

We have found no merit to any of Bloomington's allegations of error. We therefore affirm the judgment of the Brown Circuit Court in favor of Richard Kuruzovich.

Affirmed.

ROBERTSON, J., concurs in result.

CONOVER, J., concurs.